UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

NICHOLAS ZIMMERMAN,

                                        Plaintiff,

        v.                                                      9:17-CV-0375
                                                                (TJM/CFH)

FORMER SUPERINTENDENT STEVEN
RACETTE, et. al.,

                                        Defendants.
_____

APPEARANCES:

NICHOLAS ZIMMERMAN
Plaintiff, pro se
02-A-16630
Wende Correctional Facility
P.O. Box 1187
Alden, NY 14004

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

## I.    INTRODUCTION

        In March 2017, pro se plaintiff Nicholas Zimmerman ("Plaintiff") commenced this civil

rights action asserting claims arising out of his confinement in the custody of the New York

State Department of Corrections and Community Supervision ("DOCCS") at Clinton

Correctional Facility ("Clinton C.F.") and Wende Correctional Facility ("Wende C.F.").  Dkt.

No. 1 ("Compl."). By Order filed on April 4, 2017, United States District Judge Allyne Ross of

the Eastern District of New York ("Eastern District") transferred this action to the Northern

District of New York ("Northern District").  Dkt. No. 4.  On October 23, 2017, Plaintiff filed an

Amended Complaint, with exhibits. Dkt. No. 14. In a Decision and Order filed November 30, 2017 (the "November Order"), the Court reviewed the sufficiency of the Amended Complaint in accordance with 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A. *See* Dkt. No. 17. On the basis of that review, the Court directed defendants to respond to the following: 1) Eighth Amendment claims related to Plaintiff's conditions of confinement in Cell 13 at Clinton C.F.; (2) Eighth Amendment claims related to a Shield Order; (3) Eighth Amendment claims against related to the length of Plaintiff's SHU confinement at Clinton C.F.; (4) Eighth Amendment deliberate medical indifference claim related to a suicide attempt; (5) First Amendment claims related to mail tampering; and (6) First Amendment retaliation claims. Dkt. No. 17 at 60-61. With respect to Plaintiff's Fourteenth Amendment due process claims arising from disciplinary hearings, Plaintiff was advised that in order to proceed with these claims, he must submit a *Peralta* Waiver. *See* Dkt. No. 17 at 25-27.

On April 2, 2018, defendants Clinton C.F. Deputy Superintendent of Security Brown ("Brown"), Librarian K. Delisle ("K. Delisle"), Officer P. Devlin ("Devlin"), Doctor Galanie ("Galanie"), Deputy Keysor ("Keysor"), Clinton C.F. Superintendent Michael Kirkpatrick ("Kirkpatrick"), Clinton C.F. Deputy Superintendent of Programming Macintosh ("Macintosh"), J. Miller ("Miller"), Officer C. Stickney ("Stickney"), Officer Mallioux ("Mallioux"), Officer S. Beaudette ("Beaudette"), Lieutenant Rief ("Rief"), Sergeant Delisle ("Delisle"), Sergeant Randall ("Randall"), Director of Special Housing Unit ("SHU") D. Venettozzi ("Venettozzi"), and Deputy Zerniak ("Zerniak") filed an Answer. Dkt. No. 38. On July 18, 2017, defendants Officer R. Lee ("Lee"), Clinton C.F. Superintendent Steven Racette ("Racette"), SHU Sergeant Orzech ("Orzech"), and Christopher Gadway ("Gadway") filed an Answer. Dkt.

2

Nos. 49, 50.  On July 19, 2018, defendant Lisa J. Clemons ("Clemons") filed an Answer.[1]

Dkt. No. 51.

Presently before the Court is Plaintiff's motion for reconsideration of portions of the

November Order and Plaintiff's *Peralta* waiver.[2]  Dkt. No. 47.  Plaintiff also moves to transfer

the action to the Eastern District.  *Id*. at 10.  Defendants oppose the motion for

reconsideration.  Dkt. No. 48.

## II.     MOTION FOR RECONSIDERATION

## A.     Legal Standard

"A court may justifiably reconsider its previous ruling if: (1) there is an intervening

change in the controlling law; (2) new evidence not previously available comes to light; or (3)

it becomes necessary to remedy a clear error of law or to prevent manifest injustice."

*Delaney v. Selsky*, 899 F. Supp. 923, 925 (N.D.N.Y. 1995) (citing *Doe v. New York City Dep't

of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir. 1983)).  "A motion for reconsideration should be

granted only where the moving party demonstrates that the Court has overlooked factual

matters or controlling precedent that were presented to it on the underlying motion and that

would have changed its decision."  *In re Worldcom, Inc. Sec. Litig*., 308 F.Supp.2d 214, 224

(S.D.N.Y. 2004).  "The standard for granting a motion for reconsideration is strict[.]"  *Shrader*

_____

[1]       Procedural issues related to the remaining defendants, Dumar and Adams, are discussed *infra.*

[2]       On April 3, 2018, the Court granted Plaintiff an extension of time to file a motion for
reconsideration of the November Order.  Plaintiff was directed to file the motion on or before June 1, 2018.  Dkt.
No. 41.  Plaintiff filed the within motion on May 30, 2018.  *See* Dkt. No. 47 at 10; *see Noble v. Kelly*, 246 F.3d 93,
97 (2d Cir. 2011) (citation omitted) (holding that under the "prison mailbox rule," the date of filing is deemed to be
the date that the prisoner-plaintiff delivered the submission to a prison guard for mailing to the court, which is
presumed to be the date that the submission was signed).  Defendants do not object to the timeliness of the
motion.

*v. CSX Transportation, Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "A motion for reconsideration may not be used to advance new facts, issues or arguments not previously presented to the Court, nor may it be used as a vehicle for relitigating issues already decided by the Court." *Id.* "To allow reconsideration on [new facts] [. . . ] would undermine the finality of court rulings[.]". *AEP-PRI Inc. v. Galtronics Corp*., No. 12 CIV. 8981, 2013 WL 5289740, at *2 (S.D.N.Y. Sept. 19, 2013), *aff'd*, 576 F. App'x 55 (2d Cir. 2014) (denying motion to reconsider because the plaintiff sought to amend his pleading with new facts that he previously failed to plead).

**B.    Discussion**

Plaintiff moves to reconsider the portion of the November Order that dismissed the following claims: (1) Equal Protection and First Amendment claims against Head Mail Clerk Melody Cayea ("Cayea") related to pornographic material; (2) Eighth Amendment claims related to Plaintiff's conditions of confinement in the Mental Health Unit ("MHU") against Galanie and MHU Chief Woldron ("Woldron"); (3) Eighth Amendment deliberate medical indifference claims against J. Krygier ("Krygier"), Woldron, Doctor Sawyer ("Sawyer"), Adams, Keysor, Brown, Racette, Nurse Administrator C. Simpson ("Simpson"), Nurse Administrator Johnson ("Johnson"), Nurse Kahn ("Kahn"), and Deputy Lamanna ("Lamanna"); (4) Eighth Amendment failure-to-protect claims against Gadway, Commissioner Hearing Officer Bullis ("Bullis"), Brown, and Racette; (5) First Amendment claims related to freedom of association and speech; (6) First Amendment religious claims against Sergeant Hicks ("Hicks"); and (7) conspiracy claims. *See* Dkt. No. 47, *generally*.

**1.    Equal Protection**

4

In the November Order, the Court dismissed Plaintiff's claim that Cayea violated his

Equal Protection rights when she confiscated his pornographic materials.  *See* Dkt. No. 17 at

27-28.  The Court held:

> Plaintiff fails to allege any facts suggesting how he was treated differently than  a similarly situated inmate. Plaintiff's vague and conclusory allegations are insufficient to plausibly suggest an equal protection violation. *See Byng v. Delta Recovery Servs., LLC.*, No. 9:13-CV-0733 (MAD/ATB), 2013 WL 3897485, at *15, n. 5 (N.D.N.Y. July 29, 2013) (holding that Attica inmate alleged no facts in the complaint to indicate he was similarly situated to any one or that someone else was treated differently than he was); *see also Barnes v. Henderson*, 490 F. Supp. 2d 313, 318 (W.D.N.Y. 2007) (dismissing the equal protection claim because the plaintiff did not identify any similarly situated inmates who were treated differently from him, "much less shown an 'extremely high' level of similarity between them"). Accordingly, Plaintiff's Fourteenth Amendment Equal Protection claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

Dkt. No. 17 at 28.

In the motion to reconsider, Plaintiff has not cited to any caselaw which would

mandate that this portion of the November Order be vacated and has not demonstrated an

intervening change in controlling law, nor has he articulated any clear legal error.  Rather,

Plaintiff asks for reconsideration based upon new factual allegations.  Plaintiff asserts that he

was treated differently than "all prisoners in New York State." Dkt. No. 47 at 2.  Plaintiff's

new allegations do not constitute "new evidence" and are insufficient to warrant

reconsideration.  While Plaintiff disagrees with the prior Order, Plaintiff has not made any

showing that reconsideration of this portion of the Order is warranted.  *See Brown v.*

*Middaugh*, No. 96–CV–1097, 1999 WL 242662 at *1 (holding that in seeking reconsideration,

a party is not allowed to "put forward additional arguments that a party could have made but neglected to make before judgment."). The Court finds no factual or legal basis to reconsider the sua sponte dismissal of these claims. Accordingly, the Court denies Plaintiff's motion for reconsideration of this portion of the November Order.

### 2. Eighth Amendment - Conditions of Confinement

#### a. Length of SHU Confinement

In the November Order, the Court dismissed Plaintiff's Eighth Amendment claims against Krygier related to the length of his SHU confinement. *See* Dkt. No. 17 at 35. The Court held:

> The Amended Complaint lacks facts related to when Plaintiff was transferred to Wende C.F. and how long Plaintiff was confined in the SHU in Wende C.F., if at all. Absent facts related to the conditions of Plaintiff's SHU confinement, these allegations fail to trigger constitutional protections. *See Peralta v. Vasquez*, No. 01 CIV. 3171, 2008 WL 2856474, at *1 (S.D.N.Y. July 22, 2008) (holding that two years of segregation in a special housing unit does not necessarily constitute a violation of the Eighth Amendment). Consequently, Plaintiff's Eighth Amendment claims against Krygier are dismissed for failure to state a claim.

Dkt. No. 17 at 35.

While Plaintiff seeks reconsideration of this portion of the Order, Plaintiff has not cited to any caselaw which would mandate that the court's prior decision be vacated and has not demonstrated an intervening change in controlling law, nor has he articulated any clear legal error. Rather, Plaintiff seeks reconsideration based upon new factual allegations. To wit, Plaintiff claims that Krygier was responsible for "at least one year of my SHU time." *See* Dkt. No. 47 at 2. For the reasons discussed in Part II(B)(1) *supra*, the Court denies Plaintiff's

motion for reconsideration of this portion of the November Order.

**b.    Conditions in MHU**

In the November Order, the Court dismissed Plaintiff's Eighth Amendment claims

based upon his confinement in the MHU holding:

> The Amended Complaint does not contain facts related to how
> long Plaintiff was confined in the MHU for observation or any
> facts suggesting that the conditions in the MHU were unduly
> harsh or that he suffered from a deprivation of basic human
> needs.  Moreover, Plaintiff has not plead that defendants acted
> with deliberate indifference.

Dkt. No. 17 at 33-34.

In the motion, Plaintiff refers to "Exhibit T-8", submitted in support of the Amended

Complaint (Dkt. No. 14-4 at 49-52), and claims that the Court misstated or overlooked facts.

The document is a four-page letter dated July 22, 2015 and addressed to Kirkpatrick.  In the

letter, Plaintiff alleged that he was admitted to the MHU on July 12, 2015 and remained in the

MHU for eight days.  Dkt. No. 15-5 at 49-50.  During that time, Plaintiff claims that he was

denied food, utensils, slippers, playing cards, mail, books, and Kosher food.  *Id.*

Even assuming the Court overlooked these facts, the facts contained in the letter do

not alter the conclusions in this portion of the November Order because the conditions

alleged do not implicate the Eighth Amendment.  *See Cunningham v. Jones*, 567 F.2d 653,

659-60 (6th Cir.1977) (dismissal of prisoner's complaint alleging Eighth Amendment violation

for being served only one meal a day reversed and remanded for determination of whether

one meal a day would provide adequate nutrition to maintain normal health); *Robles v.*

*Coughlin*, 725 F.2d 12, 15 (2d Cir.1983) (an occasional deprivation of meals and eating

utensils cannot rise to a constitutional violation); *Collins v. Fischer*, No. 15-CV-103, 2018 WL

7

1626528, at *8 (S.D.N.Y. March 30, 2018) (concluding that the failure to provide eating

utensils does not suffice to state an Eighth Amendment claim) (citations omitted); *Beckford v.

Portuondo*, 151 F.Supp.2d 204, 211 (N.D.N.Y. 2001) ("Nowhere has it been held that

prisoners are entitled to complete and unfettered access to water or showers.") (collecting

cases).  Moreover, the correspondence does not suggest that any defendant acted with

deliberate indifference to an excessive risk to his health.  *See Branham v. Meachum*, 77 F.3d

626, 630-31 (2d Cir. 1996).  Consequently, the Court denies Plaintiff's motion for

reconsideration of this portion of the November Order.

By way of the motion, Plaintiff also attempts to assert new supervisory claims against

Kirkpatrick, Bell, and Sawyer related to his MHU confinement.  *See* Dkt. No. 47 at 3.  Plaintiff

asserts that Kirkpatrick and Bell were "on notice" through the grievance process.  *See id*.

"Where plaintiff seeks to plead a new claim, he is advancing new facts, issues, and

arguments not previously presented.  *Perez v. New York City Dep't of Corrs*., No. 10-CV-

2697, 2013 WL 500448, at *2 (E.D.N.Y. Jan. 17, 2013).  Reconsideration is not the proper

vehicle to add new claims.  *See id.*; *see also Holcombre v. U.S. Airways Group, Inc*., No. 03-

CV-4785, 2014 WL 4907141, at *3 (E.D.N.Y. Sept. 30, 2014) (any new claims or causes of

action must be filed in an amended complaint).  Even assuming this claim was plead in the

Amended Complaint, as discussed *supra*, Plaintiff has failed to sufficiently allege that he was

subjected to unconstitutional conduct which defendants, as supervisors, could be held liable.

*See Toole v. Connell*, No. 04-CV-0724 (LEK/DEP), 2008 WL 4186334, at *7 (N.D.N.Y. Sept.

10, 2008); *see also Linares v. Mahunik*, No. 05-CV-625 (GLS/RFT), 2006 WL 2595200, at

*11 (N.D.N.Y. Sept. 11, 2006); *see Elek v. Inc. Vill. of Monroe*, 815 F.Supp.2d 801, 808

(S.D.N.Y. 2011) (collecting cases for the proposition that "because plaintiff has not

established any underlying constitutional violation, she cannot state a claim for 1983 supervisory liability").  Accordingly, the Court denies Plaintiff's motion for reconsideration to include these claims.

### 3. Eighth Amendment - Deliberate Medical Indifference

#### a. Suicide Attempt

In the November Order, the Court dismissed Plaintiff's Eighth Amendment deliberate medical indifference claim against Sawyer related to Plaintiff's suicide attempt for failure to plead personal involvement.  *See* Dkt. No. 17 at 37.  In his motion, Plaintiff argues, it is "safe to assume Sawyer signed off on my release from MHU" because Sawyer "was the only doctor on the RCTP team."  *See* Dkt. No. 47 at 4.

Plaintiff has not cited to any caselaw, new evidence, and has not demonstrated an intervening change in controlling law, nor has he articulated any clear legal error.  While Plaintiff disagrees with this portion of November Order, Plaintiff has not made any showing that reconsideration is warranted.  *See, e.g., Banco de Seguros Del Estado v. Mut. Marine Offices, Inc*., 230 F.Supp.2d 427, 431 (S.D.N.Y. 2002) (denying motion for reconsideration where movant "reargue[d] the points it made during the initial briefing and . . . explain[ed] to the Court how its analysis is 'erroneous' "); *United States v. Delvi*, 2004 WL 235211 (S.D.N.Y. Feb. 6, 2004) (denying motion for reconsideration where movant "point[ed] to no facts or law that the Court overlooked in reaching its conclusion, and instead simply reiterate[d] the facts and arguments that the Court already considered and rejected").  Accordingly, there is no basis for reconsideration of this portion of the order.

#### b. Medical Boots, Lotion, and Shaving Cream

In the November Order, the Court dismissed Plaintiff's constitutional claims related to

medical supplies and personal hygiene items holding:

> Plaintiff claims that Adams, Keysor, Brown, Racette, Simpson, and Lamanna were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment when they refused to provide footwear, electric clippers, and shaving cream. *See* Dkt. No. 14-1 at 67-68. In this regard, the Amended Complaint lacks facts regarding the precise nature of Plaintiff's foot or other medical conditions. Construing the Amended Complaint liberally, Plaintiff alleges that he suffers from a skin condition that causes inflammation and bumps to develop after shaving. *See id.* at 24. While Plaintiff complains about razor "bumps," there is no claim of any serious medical need related to the bumps. Courts in this Circuit have found that skin conditions are not "serious medical needs." *See Lewal v. Wiley*, 29 F. App'x 26, 29 (2d Cir. 2002). Thus, Plaintiff's Eighth Amendment deliberate medical indifference claims related to his medical boots, clippers, and shaving cream are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

Dkt. No. 17 at 37-38.

In the motion, Plaintiff asserts, "I have provided as much info as I can regarding this issue[.]" *See* Dkt. No. 47 at 4. Plaintiff has not cited to any caselaw which would mandate that the this portion of the prior decision be vacated and has not demonstrated an intervening change in controlling law, nor has he articulated any clear legal error. For the reasons set forth in Part II(B)(3)(a) *supra*, there is no basis for reconsideration of this portion of the order.

### c.  Hunger Strike

In the November Order, the Court dismissed Plaintiff's Eighth Amendment claims related to his hunger strike:

> "Prison administrators have a right and a duty to step in and force an inmate to take nourishment if a hunger strike has progressed to the point where continuation risks serious injury or death." *Owens v. Hinsley*, 635 F.3d 950, 955 (7th Cir. 2011) (citation omitted). "[I]f weight loss and temporary discomfort

are the only consequences of refusing to eat, then the inmate's choice to go on a hunger strike raises no Eighth Amendment concern." *Id*. (citations omitted). Here, Plaintiff refused to eat for forty two days and claims that he suffered from weight loss. *See* Dkt. No. 14-1 at 56. No additional facts are alleged. Thus, as presently plead, the Amended Complaint does not state a claim for deliberate medical indifference related to Plaintiff's hunger strike.

Dkt. No. 17 at 38.

In the motion, Plaintiff refers to "Exhibit Y-24", submitted in support of the Amended Complaint (Dkt. No. 14-5 at 41-43), and claims that the Court overlooked facts. In the document, a letter addressed to Lamanna, Woldren, Johnson, Keyser, and Kirkpatrick, Plaintiff claims that he consumed only milk, juice, water, and fruit and that he complained of shortness of breath, deteriorating eye sight, heart palpitations, weakness, stomach pain, dehydration, migraines, and vomiting. Dkt. No. 14-5 at 41-43. Even assuming that the Court overlooked these facts, this purported "error" does not impact the analysis or the holdings in the Court's prior Order. *See Green v. Phillips*, No. 04 CIV. 10202, 2006 WL 846272, at *5 (S.D.N.Y. Mar. 31, 2006) (dismissing Eighth Amendment claim because the plaintiff chose to go on the hunger strike and the symptoms did not rise to the level of a "sufficiently serious" condition, i.e., "a condition of urgency, one that may produce death, degeneration, or extreme pain" and were to be expected by someone who does not eat). Accordingly, there is no basis for reconsideration of this portion of the order.

### d.    Prescription Medication

In the November Order, the Court dismissed Plaintiff's Eighth Amendment claims against Kahn for failure to plead that Kahn acted with the necessary culpable state of mind. *See* Dkt. No. 17 at 39. The Court reasoned that the allegation that Kahn was deliberately

11

indifferent to Plaintiff's medical needs when she refused to refill his blood pressure medication was a "quarrel with the nature of treatment" and not an Eighth Amendment violation. *Id.*

In the motion, Plaintiff claims that Kahn, "should already know that withholding blood pressure pills could result in a stroke." *See* Dkt. No. 47 at 5. Plaintiff has not cited to any caselaw, new evidence, and has not demonstrated an intervening change in controlling law, nor has he articulated any clear legal error. For the reasons set forth in Part II(B)(3)(a) *supra*, there is no basis for reconsideration of this portion of the order.

By the motion, Plaintiff also attempts to assert a new retaliation claim against Kahn and alleges that she failed to refill the prescription because he filed lawsuits and grievances against staff. *See* Dkt. No. 47 at 5. As discussed in Part II(B)(2)(b) *supra*, reconsideration is not the proper vehicle to add new claims. The Court denies Plaintiff's motion for reconsideration of this portion of the November Order.

### 4. Eighth Amendment - Failure to Protect

In the November Order, the Court dismissed Plaintiff's Eighth Amendment failure-to-protect claims holding:

> Here, Plaintiff claims that Bullis and Gadway exposed him to the threat of violence when they made him sit in the hallway for one hour, in the vicinity of mental health patients, with shackles and handcuffs. *See* Dkt. No. 14-1 at 17-18. Plaintiff has not plead that he was threatened or that he was actually physically injured. Plaintiff's claim does not survive sua sponte review because he does not allege that he was actually injured. *See Wolters v. Fed. Bureau of Prisons*, 352 F. App'x 926, 928 (5th Cir. 2009) (holding that the plaintiff could not prevail on a failure-to-protect claim because he did not allege that he suffered any actual physical injury from the defendants purported failure to protect).

Dkt. No. 17 at 40.

In the motion, Plaintiff "disagrees" with the Court's position (*see* Dkt. No. 47 at 7), but does not cite to any caselaw which would mandate that this portion of the November Order be vacated and has not demonstrated an intervening change in controlling law, nor has he articulated any clear legal error. For the reasons set forth in Part II(B)(3)(a) *supra*, there is no basis for reconsideration of this portion of the order.

**5.    First Amendment**

**a.    Mail**

In the Amended Complaint, Plaintiff claimed that, on two occasions, Cayea confiscated his incoming mail. In the November Order, the Court dismissed the First Amendment claims holding that, "[n]othing in the Amended Complaint suggests that Cayea regularly interfered with Plaintiff's mail." Dkt. No. 17 at 46. Plaintiff moves for reconsideration of this portion of the Order claiming that while Cayea interfered on only two occasions, as a result of her interference, he stopped ordering from the company that supplied the pornographic material. *See* Dkt. No. 47 at 2. Therefore, Cayea's denials "had the effect of stopping (hundreds) of pieces of mail between me and [the company]." *Id.*

As discussed in Part II(B)(1) *supra*, Plaintiff's attempt to assert new facts, not previously before the Court, does not provide a basis for reconsideration. Moreover, even if this allegation was plead in the Amended Complaint, it amounts to nothing more than speculation and therefore, it does not alter the Court's decision to dismiss Plaintiff's mail tampering claim. *See White v. Vance*, No. 10 CV 6142, 2011 WL 2565476, at *6 (S.D.N.Y. June 21, 2011) (dismissing the First Amendment mail claim because the plaintiff only speculated that the defendants tampered with his mail on more than one occasion).

13

**b. Freedom of Association/Speech**

In the November Order,

> Inmates do not have a constitutional right to conduct business while incarcerated. *French v. Butterworth*, 614 F.2d 23, 24 (1st Cir. 1980). Moreover, the First Amendment does not protect an inmate's right to media access. *Manley v. Fordice*, 945 F.Supp. 132, 134 (S.D. Miss. 1996); *see also Brown v. Magnusson*, No. CV-07-61, 2008 WL 4657810, at *7 (D. Maine Oct. 17, 2008) ("The First Amendment does not give a prisoner the right to act as a news correspondent[.]").

Dkt. No. 47 at 43.

With the motion, Plaintiff provided a memorandum of law citing to caselaw which, he claims, would mandate that this portion of the November Order be vacated. To wit, Plaintiff claims that the cases support the conclusion that prisoner's have a First Amendment right to conduct business. *See* Dkt. No. 47 at 5-6; Dkt. No. 47-1 at 1-24. The Court has reviewed the caselaw and finds that the holdings do not warrant reconsideration of this portion of the November Order. *See Jordan v. Garvin*, No. 01 CIV 4393, 2004 WL 302361, at *4 (S.D.N.Y. Feb. 17, 2004) (holding that "DOCS regulations prohibiting plaintiff from conducting business do not prevent plaintiff from exercising his First Amendment rights. While plaintiff may not conduct a business, he is not otherwise prevented from disseminating his work."); *see also Tormasi v. Hayman*, No. CIV.A. 08-5886, 2011 WL 890676, at *12 (D.N.J. Mar. 14, 2011), *aff'd*, 443 F. App'x 742 (3d Cir. 2011) (explaining that in the *Abu-Jamal* case, the Court did not hold that an inmate had a First Amendment right to conduct a business while in prison. "To the contrary, the Court noted that, '[t]here are no doubt many businesses or professions, which if practiced within the prison, would necessarily burden prison officials or other inmates.' ") (citing *Abu-Jamal v. Price*, 154 F.3d 128, 135 (3rd Cir. 1998)).

14

### c. Religion

In the November Order, the Court dismissed Plaintiff's First Amendment claims related

to his religious freedom holding that:

> Here, the Amended Complaint lacks any facts establishing that Plaintiff's religious beliefs were "sincerely held" or that his beliefs were "substantially burdened." Regarding Plaintiff's Kufi, Plaintiff claims that Hicks refused to allow him to wear his Kufi on a single occasion. Plaintiff failed to plead facts suggesting that this de minimis interference substantially burdened his religious beliefs. *See Kravitz v. Fischer*, No. 9:12-CV-1011 (LEK/TWD), 2014 WL 4199245, at *13 (N.D.N.Y. Aug. 22, 2014) (dismissing the plaintiffs' First Amendment claim regarding the Chanukah candles on the grounds that denying the plaintiffs Chanukah candles on a single occasion was de minimis and did not substantially burden their sincerely held religious beliefs). With respect to Plaintiff's meals, the Amended Complaint contains nothing more than vague accusations with unspecified dates, times, or facts suggesting establishing how Plaintiff was burdened. The allegations, without more, fail to plausibly suggest that defendant burdened Plaintiff's right to freely practice his religion.

Dkt. No. 17 at 45.

In the motion, Plaintiff claims Hicks' single denial resulted in Plaintiff being prevented

from ever wearing his Kufi because he was threatened with a misbehavior report if he

attempted to purchase another Kufi. Dkt. No. 47 at 7. As discussed in Part II(B)(1) *supra*,

Plaintiff's attempt to assert new facts, not previously before the Court, does not provide a

basis for reconsideration. Further, as discussed in Part II(B)(5)(a) *supra*, the allegations

amount to nothing more than speculation. To the extent that Plaintiff attempts to plead a

retaliation claim against Hicks, related to his Kufi, as discussed in Part II(B)(2)(b) *supra*,

reconsideration is not the proper vehicle to add new claims.

### 6. Conspiracy

In the Amended Complaint, Plaintiff alleged that defendants conspired to withhold his legal documents, deny mental health treatment and adequate medical care, violate his First Amendment rights to freedom of speech, religion, and library services, to deny him due process, to retaliate against him, and subject him to cruel and unusual punishment. *See* Am. Compl., *generally*. In the November Order, the Court held that even if Plaintiff had alleged a plausible conspiracy claim, the claim was subject to dismissal based upon the intracorporate conspiracy doctrine. *See* Dkt. No. 17 at 52.

In the motion, Plaintiff claims that the Court's dismissal of his conspiracy claims, on the basis of the intracorporate conspiracy doctrine, was improper. *See* Dkt. No. 47 at 7-8. The motion includes citations to cases discussing various exceptions to the intracorporate conspiracy doctrine. *See id.* at 8-9; Dkt. No. 47-1 at 24-30. Construing the motion liberally, Plaintiff argues that the Court erred in concluding that one of the enumerated exceptions did not apply to his claim. While Plaintiff provides a plethora of caselaw, he does not argue that there was been an intervening change in the controlling law, that new evidence has come to light, or that the Court overlooked or misstated any facts alleged in the Amended Complaint. The recitation of caselaw related to the intracorporate conspiracy doctrine does not provide a basis to reconsider this Court's prior ruling.

## III. *PERALTA* WAIVER

In the November Order, the Court found that Plaintiff adequately plead Fourteenth Amendment Due Process claims against defendants Bullis, Devlin, Hearing Officer Lieutenant Minard ("Minard"), Racette, Director of SHU Albert Prack ("Prack"), Director of SHU Bezio ("Bezio"), Venettozzi, and Kirkpatrick related to the following disciplinary hearings: (i) two hearings conducted in July 2014; (ii) a hearing conducted in August 2015;

and (iii) three hearings conducted in April 2016, May 2016, and February 2017. *See* Dkt. No. 17 at 25-27. Plaintiff was advised that in order to proceed with these claims, he must submit a *Peralta* Waiver. *See id.*

Plaintiff has provided a statement that reads, in its entirety, "The Pro Se Plaintiff waives for all times all claims in this action relating to disciplinary sanctions affecting the duration of my confinement, in order to proceed with claims challenging the sanctions affecting the conditions of confinement." Dkt. No. 4 at 1. Given Plaintiff's pro se status, the Court has liberally construed his statement as "abandoning, not just now, but also in any future proceeding, any claims he may have with respect to the duration of his confinement" that arose out of the aforementioned proceedings. *See Peralta v. Vasquez*, 467 F.3d 98, 104 (2d Cir. 2006).

Based upon the foregoing, all claims set forth in the Amended Complaint related to disciplinary sanctions imposed on Plaintiff, which affect the duration of his confinement, are dismissed. Defendants Bullis, Devlin, Minard, Racette, Prack, Bezio, Venettozzi, and Kirkpatrick shall respond to Plaintiff's Fourteenth Amendment Due Process claims challenging sanctions affecting Plaintiff's conditions of his confinement.

## IV.     MOTION TO CHANGE VENUE

Plaintiff moves to transfer this matter to the Eastern District claiming that he previously resided in that District and that he intends to return to the Eastern District upon his release from custody. Dkt. No. 47 at 10. The parties to this action are all in the Northern District of New York, the events took place in the Northern District of New York, and the documents and witnesses are all in this district. Because all the defendants, witnesses, and documents are in this district, it would be highly inconvenient to transfer this case to a district that is

totally unrelated to the original action and where the original action could not have been brought.  Plaintiff's motion is denied.

## V.    CLAIMS AGAINST DUMAR

In the Amended Complaint, Plaintiff alleged that defendant Sergeant Dumar ("Dumar") was conducting "rounds" with defendant Deputy of Security E. Bell ("Bell") while Lee was searching Plaintiff's cell.  Dkt. No. 14-1 at 33.  Plaintiff yelled to call their attention to the search, but they did not respond.  *Id.*  After the search, Lee confiscated Plaintiff's books, magazines, documents, and photographs.  *Id.* at 33, 35.  Plaintiff filed a grievance related to the magazines but DUmar was not referenced in the grievance.  Dkt. No. 14-1 at 35; Dkt. No. 14-5 at 14.  Indeed, the Amended Complaint, and exhibits annexed, do not contain facts suggesting that Dumar was personally involved in any constitutional deprivation.  In light of the fact that Plaintiff failed to attribute any constitutional violation to Dumar, all claims against Dumar are dismissed.  *See Cipriani v. Buffardi*, No. 06–CV–0889 (GTS/DRH), 2007 WL 607341, *1 (N.D.N.Y. Feb.20, 2007) ("Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff.") (citation omitted); *see also Casino v. Rohl*, No. 14-CV-2175, 2014 WL 5425501, at *6 (E.D.N.Y. Oct. 23, 2014) (dismissing complaint since the plaintiff had not adequately pled the defendant's personal involvement in any of the constitutional deprivations alleged in the amended complaint).  The Clerk of the Court is directed to dismiss Dumar as a defendant herein.

## VI.    SERVICE ISSUES

On January 29, 2018, the Clerk issued a summons to Adams.  Dkt. No. 24.  On February 23, 2018, the Court received notice from DOCCS that Adams was not an employee

at Clinton C.F.  Dkt. No. 26.  On March 16, 2018, the summons was returned to the Court as "unexecuted."  Dkt. No. 36.  On April 3, 2018, the Clerk re-issued a summons to Adams. Dkt. No. 40.  On April 25, 2018, service of process was effected upon Adams and the summons was personally served and accepted by Wendy King, "IRC2", on Adams behalf. Dkt. No. 43 at 5.

On May 18, 2018, the Court received an amended copy of the acknowledgment of service upon Adams with the notation, "per DOCCS letter attached."  Dkt. No. 45 at 1.  The letter, sent from Tina Ryan, an Administrative Assistant, indicated that DOCCS, "do[es] not have any employee by the name of Robert Adams who has worked at Clinton Correctional Facility."  *See id*. at 2.  With the letter, Ryan returned the documents for service.  *See id.*

Under *Valentin*, a pro se litigant is entitled to assistance from the district court in identifying a defendant for service of process.  *See Valentin*, 121 F.3d at 75–76.  Although the Amended Complaint provides the name of the defendant, the Marshals Service has been unsuccessful in its attempts to effectuate service.  To complicate matters, Plaintiff is no longer incarcerated at Clinton C.F.  Accordingly, the Court instructs the Attorney General's Office to advise the Court whether it is representing Adams and, if so, whether Adams waives service of summons.  If the Attorney General's Office is not representing Adams or if the defendant declines to waive service, the Court instructs the Attorney General's Office to provide the full name of the defendant and an address where the defendant can currently be served.[3]

## VI.    CONCLUSION

---

[3]    Because the failure to serve the defendant within the 120 days contemplated by Federal Rule of Civil Procedure 4(m) is not the result of Plaintiff's lack of effort, the Court finds that good cause has been shown to extend the date of service.  Fed.R.Civ.P. 4(m).

19

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's motion for reconsideration (Dkt. No. 51) is **DENIED**; and it is further

**ORDERED** that the following claims are dismissed: (1) all claims set forth in the Amended Complaint related to disciplinary sanctions imposed on Plaintiff, which affect the duration of his confinement; and (2) claims against Dumar; and it is further

**ORDERED**, that the Clerk of the Court is directed to amend the docket as follows: (1) to include Bullis, Minard, Prack, and Bezio as defendants herein; and (2) to dismiss Dumar as a defendant; and it is further

**ORDERED** that Bullis, Devlin, Minard, Racette, Prack, Bezio, Venettozzi, and Kirkpatrick shall respond to Plaintiff's Fourteenth Amendment Due Process claims challenging sanctions affecting Plaintiff's conditions of his confinement; and it is further

**ORDERED**, that in light of Plaintiff's in forma pauperis status, and because the defendants will likely be represented by the New York State Attorney General, the Court will not require Plaintiff to provide copies of the Amended Complaint and exhibits attached to the Amended Complaint for service of process.  The Clerk is directed to (1) issue summonses and forward them to the U.S. Marshal to effect service of the Amended Complaint (without exhibits) on defendants Bullis, Minard, Prack, and Bezio; and (2) send a copy of the Amended Complaint, with this Order, to the Attorney General.  The exhibits will be available via the Court's electronic filing system to the Attorney General, and to any other counsel who appears on behalf of a defendant; and it is further

**ORDERED**, that a response to the Amended Complaint be filed by defendants, or their counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that the Attorney General's Office is hereby requested to produce the information as specified above, to the extent that it can, regarding "Adams" within thirty (30) days of the filing date of this Decision and Order. The information should be sent to the Clerk of the Court for the Northern District of New York along with a copy of this Decision and Order, as well as to Plaintiff at his address of record. Once this information is provided, the Clerk shall return this file to the Court for further review; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Decision and Order on Plaintiff in accordance with the Local Rules.

Dated:August 13, 2018

Thomas J. McAvoy
Senior, U.S. District Judge