**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

NICHOLAS ZIMMERMAN,

                **Plaintiff,**

    **v.**                                          **No. 9:17-CV-375**

STEVEN RACETTE, *et al.*,

                **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


**DECISION & ORDER**

**I.    INTRODUCTION**

      This *pro se* action brought pursuant to 42 U.S.C. § 1983 was referred to the Hon. Christian F. Hummel, United States Magistrate Judge, for report and recommendation. Magistrate Judge Hummel issued a Report-Recommendation and Order on January 24, 2020 which addresses Defendants' motion for partial summary judgment (Dkt. No. 68). *See* 1/24/20 Rep.-Rec. & Ord. (Dkt. No. 83) ("Rep. Rec."). Magistrate Judge Hummel recommends that Defendants' motion for partial summary judgment be granted and that the following claims be dismissed with prejudice: (1) First Amendment retaliation claims against Sgt. Orzech, C.O. Mailloux, Sgt. Randall, C.O. Gadway, C.O. Lee, C.O. Beaudette, Sgt. Delisle, C.O. Stickney, and Dr. Adams; (2) First Amendment claim against Librarian Delisle; (3) First Amendment mail tampering claim against Clemons; and (4) Eighth Amendment medical indifference claim against Dr. Gillani. Rep. Rec. at 71-72. Magistrate Judge

Hummel also recommends that the following defendants be terminated from this action: Dr. Gillani, Dr. Adams, Librarian Delisle, C.O. Mailloux, C.O. Beaudette, C.O. Gadway, C.O. Stickney, and Clemons. *Id.* at 72. Plaintiff filed objections to these recommendations. Pl. Obj., Dkt. No. 86.

## II.    STANDARD OF REVIEW

When objections to a magistrate judge's report and recommendation are lodged, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." See 28 U.S.C. § 636(b)(1)(C); *see also United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir.1997)(The Court must make a *de novo* determination to the extent that a party makes specific objections to a magistrate's findings.). "[E]ven a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument." *Machicote v. Ercole*, 2011 WL 3809920, at * 2 (S.D.N.Y., Aug. 25, 2011)(citations and interior quotation marks omitted); *DiPilato v. 7-Eleven, Inc.*, 662 F. Supp.2d 333, 340 (S.D.N.Y. 2009)(same).

General or conclusory objections, or objections which merely recite the same arguments presented to the magistrate judge, are reviewed for clear error. *Farid v. Bouey*, 554 F. Supp. 2d 301, 306 n. 2 (N.D.N.Y. 2008); *see Fisher v. Miller*, No. 916CV1175GTSATB, 2018 WL 3854000, at *3 (N.D.N.Y. Aug. 14, 2018)("[W]hen an objection merely reiterates the same arguments made by the objecting party in its original papers submitted to the magistrate judge, the Court subjects that portion of the

report-recommendation challenged by those arguments to only a clear error review.");
*Alaimo v. Bd. of Educ.*, 650 F. Supp. 2d 289, 291 (S.D.N.Y. 2009)(same); *Chime v. Peak Sec. Plus, Inc.*, 137 F. Supp. 3d 183, 187 (E.D.N.Y. 2015)(same).   After reviewing the report and recommendation, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions."  28 U.S.C. § 636(b)(1)(C).

## III.   DISCUSSION

The Court presumes familiarity with Magistrate Judge Hummel's Report-Recommendation and Order.  To the extent Plaintiff makes general objections to the report and recommendation, the Court finds no clear error and therefore these general objections are overruled. The majority of Plaintiff's other objections appear to be re-arguments that were presented to Magistrate Judge Hummel and rejected, and the Court considered these arguments under plain error review and finds none.

To the extent that Plaintiff challenges Magistrate Judge Hummel's recommendations on the asserted grounds that material questions of fact exist that must be determined by a jury, Plaintiff fails to recognize - as pointed out by Magistrate Judge Hummel - that on a motion for summary judgment once the moving party establishes a *prima facie* basis for dismissal, the burden shifts to the nonmovant to establish by admissible evidence that a disputed question of material fact exists.  *See* Rep. Rec. at 35-36.  This burden may not be satisfied by "simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and

"[c]onclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998); *see* Rep. Rec. at 36-37.[1] Further, although a court must afford a *pro se* litigant special solicitude, this special solicitude does not exempt a *pro se* litigant from compliance with relevant rules of procedural and substantive law. Rep. Rec. at 37. It is also important to note that the Second Circuit requires courts to examine prisoners' claims of retaliation "with skepticism and particular care" because prisoner retaliation claims are easily fabricated. Rep. Rec. at 39-40.

Plaintiff's argument that a question of fact exists as to whether all seven of his bags of property were transferred from Attica Correctional Facility to Clinton Correctional Facility on April 17, 2014, and whether at least one of his bags was hidden and later accessed by Clinton staff to obtain incriminating evidence against him, is insufficient. Obj. 2-6, 9. His contention that the defendants lied that the bags were transmitted in three parts is a broad conclusory allegation insufficient to contest the Defendants' properly supported contentions to the contrary. *See e.g.*, Dkt. 68-31. Similarly, Plaintiff presents nothing other than a broad

---

[1]Magistrate Judge Hummel wrote after discussing *Matsushita* and *Kerzer*:

A party opposing summary judgment is required to submit admissible evidence. *See Spiegel v. Schulmann*, 604 F.3d 72, 81 (2d Cir. 2010) ("It is well established that in determining the appropriateness of a grant of summary judgment, [the court] . . . may rely only on admissible evidence.") (internal quotation marks and citation omitted); *see also Schwapp v. Town of Avon*, 118 F.3d 106, 111 (2d Cir. 1997) ("[A]ffidavtis must be based upon concrete particulars, not conclusory allegations." (internal quotation marks and citation omitted)). "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999). "'The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff.'" *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (brackets omitted) (quoting *Anderson*, 477 U.S. at 252).

Rep. Rec. at 36-37 (emphasis added by Magistrate Judge Hummel).

conclusory allegations that C.O. Gadway went to a hidden bag to obtain incriminating evidence against him. Obj. at 9. Further, Plaintiff's objection to Magistrate Judge Hummel's "findings that Gadway's violation of media review guidelines was unsupported and previously denied by court (pg. 52)" as being "a lie," Obj. at 10, misunderstands Magistrate Judge Hummel's finding. In footnote 12 on page 52, Magistrate Judge Hummel wrote:

> Plaintiff also appears to allege that C.O. Gadway violated his constitutional rights by confiscating certain items of his property because "the mailroom and Media Review Committee allowed [him] to possess them," and by failing to submit the confiscated items to the Media Review Committee. Dkt. No. 14-1 at 13 ¶ 20. His claims in this regard are conclusory in that they are unsupported by any record evidence and, therefore, do not defeat defendants' motion for partial summary judgment. See Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998). To the extent plaintiff alleges that C.O. Gadway violated DOCCS media review procedures, such claims were previously dismissed by the Court's November 2017 Order on initial review. See Dkt. No. 17 at 55-56, 60.

Rep. Rec. at 52, n. 12.

Magistrate Judge Hummel did not find that C.O. Gadway's violation of Media Review Guidelines was unsupported but rather that, even if C.O. Gadway's conduct violated the Media Review Guidelines this conduct did not arise to a constitutional violation. Indeed, this was precisely the determination made by the Court in the November 2017 Order on initial review that Magistrate Judge Hummel referenced in footnote 12. Plaintiff's objection in this regard is without merit and is overruled.

Plaintiff's objections to Magistrate Judge Hummel's recommendation to dismiss certain claims based upon Plaintiff's unsupported belief as to what actually occurred with regard to his bags and as to what material he possessed in his cell, see Obj. at 2-6, 8-9, are insufficient and overruled. The Court adopts Magistrate Judge Hummel's recommendations relative to dismissal of the First Amendment retaliation claims against Sgt. Orzech, C.O.

5

Mailloux, and C.O. Gadway for the reasons stated in the Report Recommendation at pages 40-45 and 50-52.

Plaintiff's argument that he was denied due process because he did not receive his property from his transferred bags in a timely fashion, Obj. at 5, was not presented to Magistrate Judge Hummel and will not be considered on these objections. *See Monroe v. Kocienski*, No. 9:17-CV-1050 (GTS/DEP), 2019 WL 409412, at *2 (N.D.N.Y. Feb. 1, 2019)("[A] district court will ordinarily refuse to consider argument that could have been, but was not, presented to the magistrate judge in the first instance.")(citing *Zhao v. State Univ. of N.Y.*, 04-CV-0210, 2011 WL 3610717, at *1 (E.D.N.Y. Aug. 15, 2011) ("[I]t is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.") (internal quotation marks and citation omitted); *Hubbard v. Kelley*, 752 F. Supp.2d 311, 312-13 (W.D.N.Y. 2009) ("In this circuit, it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.") (internal quotation marks omitted)); *Charlot v. Ecolab, Inc.*, 97 F. Supp. 3d 40, 51 (E.D.N.Y. 2015)("[A] district court generally will not consider new arguments raised for the first time in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.")(citing cases); *Santiago v. City of New York*, No. 15-cv-517, 2016 WL 5395837, at *1 (E.D.N.Y. Sept. 27, 2016), *aff'd*, 697 F. App'x 36 (2d Cir. Sept. 6, 2017) ("[C]ourts ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge

in the first instance.")(quotations and citation omitted)).

Despite being allowed discovery in this matter, Plaintiff offers only a broad conclusory allegation to counter Sgt. Orzech's sworn statement that he did not damage a CD by putting a staple thru it. *See* Obj. at 13 ("What do you think he gonna [*sic*] say? That he did it? Yeah right! Orzech was last [*sic*] person in possession of the CD and I have a letter from a witness that says a staple was in it when they got it. So unless the Post Office did it, it was Orzech!"). Plaintiff's objection on this ground is overruled.

Plaintiff's broad conclusory allegations, Obj. at 7, also do not overcome Defendants' evidence that 13 Cell is "a cell in normal use in Unit-14 SHU and is regularly maintained," Dkt. No. 68-32 at ¶ 6, that Plaintiff was "afforded the opportunity for additional cleaning supplies Tuesdays, Thursdays, and Saturdays weekly" if he was unhappy with the cleanliness of his cell, *id.*, and that he was placed in 13 Cell based upon his behavior and cell availability. *See* Rep. Rec. at 45-46.[2] Furthermore, Plaintiff does not overcome

---

[2]Plaintiff asserts in his objections that he has a recorded conversation between himself and Randall that allegedly indicates that his behavior did not warrant being placed in 13 Cell. *See* Obj. at 7. To the extent this references a DVD that Plaintiff claims to have that shows his interactions with correction officers in the property area, Magistrate Judge Hummel notes that Plaintiff stated that he could controvert Defendants' assertion that he became aggressive in the property area but that "no such evidence has been submitted to the Court as of the filing of plaintiff's opposition on July 22, 2019; the deadline for filing opposition papers has expired; and plaintiff's general disagreement with defendants' documentary evidence fails to raise a genuine issue of material fact." Rep. Rec at 44. To the extent that Plaintiff's objection is based upon the same DVD, or is based on a different recording that was not presented to the magistrate judge, this evidence will not be considered on the objection. *See Monroe*, 2019 WL 409412, at *2("[A] a district court will ordinarily refuse to consider evidentiary material that could have been, but was not, presented to the magistrate judge in the first instance."). "[F]or the district judge to review new evidence or arguments would reduce the magistrate's work to something akin to a meaningless dress rehearsal," *Michalow v. East Coast Restoration & Consulting Corp.*, No. 09-cv-5475, 2018 WL 1559762, at * 6 (E.D.N.Y. Mar. 31, 2018)(quotations and citation omitted), and would frustrate the congressional objective behind § 636(b)(1) which is intended to alleviate the congestion of litigation in the district courts. *Cf. U.S. v. Raddatz*, 447 U.S. 667, 676, n.3 (1980) ("[T]o construe § 636(b)(1) to require the district court to conduct a second hearing whenever either party objected to the magistrate's credibility findings would largely frustrate the plain objective of Congress to alleviate the increasing congestion of litigation in the district courts."); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition ("The term '*de novo*' does not indicate that a secondary evidentiary hearing is required.")).

Magistrate Judge Hummel's alternative basis to dismiss the First Amendment retaliation claim against Sgt. Randall. *See* Rep. Rec. at 46-49. Accordingly, the objections in this regard are overruled and the Court adopts Magistrate Judge Hummel's recommendation to dismiss the First Amendment retaliation claim against Sgt. Randall. *Id.*

As to Plaintiff's claims against C.O. Lee, Plaintiff's contention that C.O. Lee had no basis for a cell shield order because Plaintiff said that he was going to "verbally violate" C.O. Lee as opposed to violate him in some physical sense is of no moment because Magistrate Judge Hummel found that there was nothing in the record to indicate C.O. Lee was responsible for the shield order. Rep. Rec. at 54. Plaintiff's conclusory and unsupported contention to the contrary, *see* Obj. at 10 ("Lee was directly responsible for the cell shield order because he requested it and provided the false information to obtain it.") is insufficient to satisfy Plaintiff's burden on the summary judgment motion. *See* Rep. Rec. at 54.[3] Likewise, there is no basis to find that C. O. Lee issued a retaliatory false misbehavior report because Plaintiff admits that he said he was going to "violate" C.O. Lee. Whether this was a contention that he would verbally violate C.O. Lee or violate Lee is some other sense still provides a basis to conclude that Plaintiff threatened C.O. Lee. Plaintiff's objection based upon the nomenclature of his threat does not create a material issue of fact warranting denial of the motion in this regard.

Furthermore, Plaintiff does not overcome Magistrate Judge Hummel's conclusion that

---

[3]("[T]he record evidence establishes only that (1) plaintiff was placed in a cell with a shield after C.O. Lee informed his area supervisor of plaintiff's threatening statements; (2) Sgt. Delisle and Sgt. Orzech recommended renewing the shield order on three separate occasions because "monitoring indicate[d] that the threat to staff . . . ha[d] not lessened" and "continuation of th[e shield] order for staff protection [wa]s warranted at th[ose] time[s]"; and (3) the shield order was authorized by higher ranking Clinton personnel. Dkt. No. 14-4 at 46, 47, 48.")

C.O. Lee's conduct in issuing July 12, 2015 misbehavior reports caused no adverse action as required to satisfy the second element of a First Amendment retaliation claim because Plaintiff suffered no harm as a result. Rep. Rec. at 56-57.   Accordingly, Plaintiff's objection in this regard is overruled.

Regarding the claim that C.O. Lee retaliated against Plaintiff by destroying his books and papers, Magistrate Judge Hummel wrote:

> [D]efendants have established that the property C.O. Lee confiscated from plaintiff's cell during the June and July 2015 cell searches was destroyed in September 2015 pursuant to DOCCS Directive #4911 because the visitor plaintiff selected to receive that   property never visited the facility within the specified time-frame—not out of retaliation for plaintiff filing his May 2015 grievance. *See* Dkt. No. 14-5 at 16, 17.  Indeed, plaintiff signed the Authorization for Disposal of Personal Property form on August 14, 2015, which explicitly provided that "[t]he items [would] be held a maximum of 14 days pending arrival of a visitor," and plaintiff did not select an alternative choice for disposition of his property in the event the visitor did not accept his property.  Dkt. No. 68-28 at 1.  Therefore, defendants have established that plaintiff's excess magazines and books would have been destroyed regardless of any retaliatory motive.

Rep. Rec. at 53 (case citations omitted).  Plaintiff's conclusory allegation that "it does not matter which visitor showed up on his visit because the package room said they had no packages for me to send out anyway! Lee had already destroyed everything!" is  insufficient to overcome the evidence submitted by the Defendants and relied upon by Magistrate Judge Hummel in rejecting this claim.  The objection in this regard is overruled.

Plaintiff's objection to Magistrate Judge Hummel's determination regarding the First Amendment retaliation claim against C.O. Beaudette is overruled. *See* Obj. at 11. Magistrate Judge Hummel correctly determined that C.O. Beaudette's actions resulted in *de minimus* deprivations to Plaintiff, and that 7 N.Y.C.R.R. § 113.16 prohibits an inmate for

processing stamps in excess of $22.50 in value. *See* Rep. Rec. at 57-59. Plaintiff's objections in this regard are overruled.

Plaintiff's objections to Magistrate Judge Hummel's determination regarding the First Amendment retaliation claims against Sgt. Delisle and C.O. Stickney are overruled. Regardless of whether Plaintiff had a First Amendment right to "publish and promote [his] book, [his] website, [his] literature, [his] company, and the Clean up the Clinton SHU Campaign," Obj. at 11, he "admitted at his deposition to engaging in the unauthorized operation of several businesses while incarcerated." Rep. Rec. at 60. (citing Dkt. No. 68-13 at 19-20). Thus, there was a legitimate basis to dismiss the operative claims against Sgt. Delisle and C.O. Stickney.

Plaintiff's objection to the magistrate judge's recommendation regarding the First Amendment retaliation claim against Dr. Adams is overruled. After the Court's initial review of Plaintiff's Amended Compliant, it found that the only claim that survived against Dr. Adams was a First Amendment retaliation claim. *See* Dkt. No. 17 at 60-61. In addressing this claim, Magistrate Judge Hummel wrote:

> [I]t is unclear whether plaintiff even bases his First Amendment retaliation claim against Dr. Adams on his filing of grievances against Dr. Adams, as he explicitly argues that Dr. Adams refused him medical treatment "based largely (or probably solely) on [his] refusal to discuss [his] case [concerning Sing Sing] with him." Dkt. No. 14-1 at 26 ¶ 36. However, even assuming plaintiff does premise his retaliation claim against Dr. Adams on his constitutionally-protected conduct of filing grievances against him, *see Davis*, 320 F.3d at 352-53, defendants are still entitled to summary judgment. Plaintiff's own documentary evidence establishes that, contrary to his contention, Dr. Adams did, in fact, examine plaintiff and proscribe various medications to treat his skin condition, including "Hydrocortisone, Fluocinonide[,] and Clindamyacin." Dkt. No. 14-5 at 9; Dkt. No. 14-4 at 68. In addition, plaintiff's documentary evidence establishes that Dr. Adams "determined that an electric shaver and Magic Shave [we]re not medically indicated" and that there was "no medical indication for medical boots." Dkt.

10

No. 14-5 at 8; Dkt. No. 14-4 at 68.  Dr. Adams' declaration, in which he states
that his "denial of plaintiff's requests for medical boots, lotion, blood pressure
and other medications was based on [his] professional evaluation of
[p]laintiff's medical needs"; that "[i]n [his] estimation, the boots and
medications requested were unnecessary"; and that he "never . . . with[e]ld
medications as a means of retaliation for [plaintiff's] filing of grievances,"
corroborates plaintiff's documentary evidence.  Dkt. No. 68-14 at 2 ¶¶ 6, 8.
Plaintiff's conclusory allegations to the contrary, including that the skin
prescriptions do not work, *see* Dkt. No. 14-1 at 29 ¶ 38, fail to raise a genuine
issue of material fact, are unsupported by the record, and amount only to a
personal disagreement with Dr. Adams' treatment based on his professional
medical judgment—which fails to support a  constitutional claim.  *See Chance*,
143 F.3d at 703 ("It is well-established that mere disagreement over the
proper treatment does not create a constitutional claim.").  Consequently, it is
recommended that plaintiff's First Amendment retaliation claim against Dr.
Adams be dismissed.

Rep. Rec. at 63-64.

Plaintiff objects to this recommendation because, he contends, he "never said

anything about grievances," and "said it was because [Plaintiff] wanted to talk to [Dr.

Adams] about [Plaintiff's] case." Obj. at 12.  Plaintiff asserts that "Adams only prescribed

the medications in question after three complaints and it was the wrong medication! [*sic*]"

*Id.*  He argues that a jury "needs to decide if Dr. Adams [*sic*] actions is [*sic*] that of a normal

doctor or acceptable standards of practice." *Id.*  Plaintiff's objection is merely a re-argument

of that presented to and rejected by Magistrate Judge Hummel, and supports the magistrate

judge's conclusion that Plaintiff fails to raise a viable constitutional claim because his claim

amounts only to a personal disagreement with Dr. Adams' treatment based on Dr. Adams'

professional medical judgment. Plaintiff's objection in this regard is overruled.

Plaintiff asserts in conclusory fashion that Defendant Clemons did not obtain a valid

mail watch order and that such an order "doesn't even state what the probable cause is."

Obj. at 12.  However, this conclusory contention does not overcome  Magistrate Judge

Hummel's finding that "defendants establish through admissible evidence [that] Clemons did obtain a 60-day mail watch order for all of plaintiff's incoming and outgoing non-privileged correspondence, which Supt. Kirkpatrick approved on December 9, 2016." Rep. Rec. at 65 (citing Dkt. No. 68-16 at 2 ¶ 7). For reasons discussed above regarding Plaintiff's burden in opposing a properly supported motion for summary judgment, this objection is overruled.

As to Plaintiff's Eighth Amendment medical indifference claim against Dr. Gillani, Magistrate Judge Hummel wrote:

> Upon careful review of the evidence, the undersigned concludes that no reasonable juror could conclude that Dr. Gillani acted with deliberate indifference to plaintiff's serious medical needs. It is undisputed that plaintiff was placed in the [mental health unit ("MHU")] on April 27, 2014, where he stayed until May 1, 2015, because he expressed threats of self-harm. *See* Dkt. No. 14-1 at 10 ¶ 17; Dkt. No. 68-25 at 3 ¶ 13. Plaintiff told Dr. Gillani "[e]very[]day . . . throughout [his] stay" in [MHU] that he "would commit suicide if [he] was forced to go back to 13 Cell and live under such inhumane conditions." Dkt. No. 14-1 at 10 ¶ 17; *see* Dkt. No. 68-13 at 39. Thus, plaintiff's stated intention to commit suicide establishes the objective element of the deliberate medical indifference test. *See Allah*, 2010 WL 5860290, at *8.
>
> As defendants argue, however, the record establishes that Dr. Gillani did not act with deliberate indifference. *See* Dkt. No. 68-3 at 13-14. Dr. Gillani's sworn declaration and treatment notes establish that he conducted an evaluation of plaintiff on May 1, 2014, and concluded that plaintiff was not suffering from any psychiatric illness, but rather, exhibiting an "environment-related agenda" designed at being "released from the SHU" and "that plaintiff's complaints did not stem from mental illness, but rather, were calculated toward an effort to be released from his confinement in the SHU." Dkt. No. 68-25 at 3 ¶¶ 23-25. Dr. Gillani based his conclusion on numerous factors, including that he had been informed that plaintiff had not engaged in self-harming behavior prior to his April 2014 transfer to MHU, his statements to Dr. Gillani that he did not wish to return to SHU and that he would prefer to return to general population to use the law library, and his denial of having suicidal ideas. *See id.* at 3 ¶¶ 15-16, 19. Dr. Gillani also observed that plaintiff had been eating and sleeping normally, denied having psychotic or anxiety symptoms, and had a history of engaging in "self-harming gestures" but no history of in-patient psychiatric treatment. *Id.* at ¶ 21; see id. at ¶¶ 17, 19. Dr. Gillani's May 1, 2014 conclusions are bolstered by plaintiff's

12

deposition testimony in which he stated that, "[a]t one point, [he] couldn't take the smell [of 13 Cell] so [he] attempted suicide to get out of the cell so that they going to move [him] to [MHU] so that [he] didn't . . . have to take the smell inside of [13 C]ell." Dkt. No. 68-13 at 23.  Moreover, consistent with Dr. Gillani's analysis, following his release back to SHU, on May 5, 2014, plaintiff alleges only that he engaged in the self-harming gesture of "fixing a noose around [his] neck,"  but does not allege in his Amended Complaint that he engaged in any actual suicide attempt on that date. *See* Dkt. No. 14-1 at 10 ¶ 17.  Based on the foregoing, "deliberate indifference cannot be inferred" from Dr. Gillani's decision to discharge plaintiff back to SHU on May 1, 2015, as the evidence before the Court does not establish that his decision "was . . . such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that [Dr. Gillani] did not base [his] decision on such a judgment." *Sims*, 2012 WL 566875, at *6.

Moreover, plaintiff's allegations, made for the first time at deposition, that he made two suicide attempts shortly after being examined by Dr. Gillani on two unspecified occasions, are uncorroborated by the record and do not defeat defendants' properly supported motion for partial summary judgment as to his Eighth Amendment medical indifference claim. *See* Dkt. No. 68-13 at 30, 37-42.  Plaintiff's deposition testimony that he actually attempted suicide by hanging on two occasions is wholly self-serving and directly contradicts the allegations made in the Amended Complaint, which state only that he "became suicidal," expressed "suicidal plans and ideations" prior to being admitted to MHU in April 2014; "fix[ed] a noose to his neck" after being released on March 5, 2014; and that he "told [Dr.] Gillani of [his] suicidal plans if [he] returned to 13 Cell." Dkt. No. 14-1 at 10 ¶ 17, 66 ¶ 95 (internal quotation marks omitted).  Indeed, when asked whether he "kn[e]w the dates" of his two suicide attempts, plaintiff responded "I don't.  They're listed in the complaint." Dkt. No. 68-13 at 30.  However, no such dates or events are mentioned in the Amended Complaint, and the record is devoid of any evidence corroborating these belated and self- serving allegations. *See* Dkt. No. 14-1 at 10-11 ¶ 17, 66 ¶ 95.  Thus, although plaintiff's *pro se* submissions are to be construed to raise the strongest arguments they suggest, a party opposing summary judgment "may not rely merely on allegations . . . in its own pleading; rather, it[] must . . . set out specific facts showing a genuine issue for trial." *Green v. Gunn*, No. 06-CV-6248 (CJS), 2009 WL 1809932, at *5 (W.D.N.Y. June 24, 2009) (internal quotation marks and citation omitted). Plaintiff has failed to make such a specific factual showing to raise a genuine issue for trial concerning Dr. Gillani's conduct.  Accordingly, it is recommended that plaintiff's Eighth Amendment deliberate medical indifference claim against Dr. Gillani be dismissed.

Rep. Rec. at 68 -71.

In his objections addressed to this claim, Plaintiff argues first that "even if Gillani concluded on May 1, 2014, that I was not suffering from any psychiatric illness, but rather exhibiting an environment-related agenda, he still should not have set me back to the SHU to kill myself! I don't know any other doctor that would, except the ones that work for MHU of course!" Obj. at 13. This objection is based upon a disagreement with Dr. Gillani's medical opinion and does provide a sufficient basis to reject Magistrate Judge Hummel's recommendation.

Plaintiff argues next that Dr. Gillani's affidavit "is not acceptable because it is based on third-party hearsay" that he had been informed that Plaintiff had not engaged in self-harming behavior prior to his April 2014 transfer to MHU. Medical opinions are often based upon the representations of third parties as to a patient's conduct or exhibition of symptoms, and as Magistrate Judge Hummel indicates, Dr. Gillani's opinion was based upon a number of factors including what Plaintiff himself told the doctor about his aversion to returning to 13 Cell in the SHU, and Dr. Gillani's observation that Plaintiff had been eating and sleeping normally, denied having psychotic or anxiety symptoms, and had a history of engaging in self-harming gestures but no history of in-patient psychiatric treatment. The reference to third-party representations was not the central basis of Dr. Gillani's opinion and is not a basis to reject that opinion or Magistrate Judge Hummel's recommendation to dismiss this claim based on Plaintiff's failure to demonstrate deliberate indifference related to the decision to discharge Plaintiff back to SHU on May 15, 2015. Plaintiff's current contention that he never told Dr. Gillani that he was not having suicidal ideations, or that he was eating and sleeping normally, appear to be issues raised for the first time in the objections and therefore failed to provide a sufficient basis to reject the magistrate judge's thorough

opinion. Moreover, as Magistrate Judge Hummel stated, Dr. Gillani concluded that Plaintiff

was not suffering from any psychiatric illness and had no history of in-patient psychiatric

treatment, but rather was exhibiting an "environment-related agenda" designed to avoid

being released from the MHU to the SHU. Further, as also stated by the magistrate judge,

Dr. Gillani's May 1, 2014 conclusions are bolstered by Plaintiff's deposition testimony in

which he stated that, "[a]t one point, [he] couldn't take the smell [of 13 Cell] so [he]

attempted suicide to get out of the cell so that they going to move [him] to [MHU] so that

[he] didn't . . . have to take the smell inside of [13 C]ell." Dkt. No. 68-13 at 23. Moreover,

consistent with Dr. Gillani's analysis, following his release back to SHU on May 5, 2014,

Plaintiff alleges only that he engaged in the self-harming gesture of "fixing a noose around

[his] neck," but does not allege in his Amended Complaint that he engaged in any actual

suicide attempt on that date. Plaintiff's current contention that he was "depressed and

suicidal out of mind" does not provide a sufficient basis to conclude that the magistrate

judge should have rejected Dr. Gillani's opinion and found that Dr. Gillani acted with

deliberate indifference to Plaintiff's well-being. Plaintiff's objections in this regard are

overruled.

## IV.    CONCLUSION

For the reasons discussed above, the Court **ACCEPTS and ADOPTS** the

recommendations in the January 24, 2020 Report-Recommendation and Order, Dkt. No.

83, for the reasons stated therein. Thus, it is hereby

**ORDERED** that Defendants' motion for partial summary judgment, Dkt. No. 68, is

**GRANTED,** and the following claims are **DISMISSED with prejudice**:  (1) First Amendment

15

retaliation claims against Sgt. Orzech, C.O. Mailloux, Sgt. Randall, C.O. Gadway, C.O. Lee, C.O. Beaudette, Sgt. Delisle, C.O. Stickney, and Dr. Adams; (2) First Amendment claim against Librarian Delisle; (3) First Amendment mail tampering claim against Clemons; and (4) Eighth Amendment medical indifference claim against Dr. Gillani, and it is further

**ORDERED** that the following defendants are **TERMINATED from this action**: Dr. Gillani, Dr. Adams, Librarian Delisle, C.O. Mailloux, C.O. Beaudette, C.O. Gadway, C.O. Stickney, and Clemons.

**IT IS SO ORDERED.**

Dated:  March 23, 2020

Thomas J. McAvoy
Senior, U.S. District Judge