UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

NICHOLAS ZIMMERMAN,

                              Plaintiff,

          -against-                                        9:17-CV-375 (LEK/CFH)

STEVEN RACETTE, *et al.*,

                              Defendants.

---

## MEMORANDUM-DECISION AND ORDER

## I.     INTRODUCTION

        Plaintiff Nicholas Zimmerman commenced this action pro se on March 24, 2017. Dkt.

No. 1. By Order filed on April 4, 2017, the Honorable Allyne Ross, United States District Judge

for the Eastern District of New York, transferred this action to the Northern District of New

York. Dkt. No. 4. Plaintiff filed an amended complaint on October 23, 2017, pursuant to 42

U.S.C. § 1983 ("Section 1983"), alleging violations of his constitutional rights arising out of his

confinement at Clinton Correctional Facility ("Clinton C.F.") by more than 20 defendants.[1] Dkt.

No. 14 ("Amended Complaint"). On November 30, 2017, the Court reviewed the sufficiency of

the Amended Complaint in accordance with 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A. Dkt.

No. 17.

---

[1] The defendants named in Plaintiff's Amended Complaint include: Former Superintendent
Steven Racette, Former Deputy of Security Brown, Former Superintendent Michael Kirkpatrick,
Former Deputy of Programs Mcintosh, Clinton Special Housing Unit Director Donald
Venettozzi, Deputy Zerniak, Lieutenant Rief, Sergeant Mark Orzech, Sergeant Kevin Randall,
Sergeant Justin Delisle, Correction Officer ("C.O.") Jimmy Mailloux, C.O. Christopher Gadway,
Chad Stickney, C.O. Richard Lee, C.O. Stephen Beaudette, C.O. P. Devlin, J. Miller, Former
Deputy Superintendent Keysor, Doctor Richard Adams, New York State Office of Mental Health
("OMH") Doctor Sohail Gillani, Senior Librarian Kristen Delisle, and DOCCS investigator Lisa
J. Clemons. See Am. Compl. at 1.

On the basis of that review, the Court directed the named defendants to respond to the following: (1) Eighth Amendment claims related to Plaintiff's conditions of confinement in an alleged unsanitary cell at Clinton C.F.; (2) Eighth Amendment claims related to a plexiglass shield on Plaintiff's cell; (3) Eighth Amendment claims related to the length of Plaintiff's SHU confinement at Clinton C.F.; (4) an Eighth Amendment deliberate indifference claim related to a suicide attempt; (5) First Amendment claims related to mail tampering; and (6) First Amendment retaliation claims. Dkt. No. 17 at 60–61. With respect to Plaintiff's Fourteenth Amendment due process claims arising from disciplinary hearings, Plaintiff was advised that to proceed with those claims he must advise, in writing, whether he waives all claims in this action relating to disciplinary sanctions affecting the duration of his confinement, in order to proceed with claims challenging sanctions affecting the conditions of his confinement. Dkt. No. 17 at 26 (citing Peralta v. Vasquez, 467 F.3d 98, 106 (2d Cir. 2006) (finding that "a prisoner, who, on bringing a § 1983 suit challenging conditions of confinement, abandons any duration of imprisonment claims arising out of the same disciplinary process" and has only "a § 1983 cognizable (conditions of confinement) suit. And the survival of that suit does not in any way implicate the concerns animating Heck [v. Humphrey, 512 U.S. 477 (1994)] and Edwards [v. Balisok, 520 U.S. 641 (1997)] . . . ")). Plaintiff then filed a motion for reconsideration, Dkt. No. 47, which the Court later denied, Dkt. No. 52.

Thereafter, the defendants named in the Amended Complaint filed a motion for partial summary judgment on March 1, 2019, Dkt. No. 68, which the Court granted on March 23, 2020, terminating several named defendants. Dkt. No. 87 ("Decision and Order").[2] Plaintiff's

_____

[2] After the partial motion for summary judgment was granted, the Court terminated claims against the following defendants from this action: Gilani, Adams, Librarian Delisle, Mailloux, Beaudette, Gadway, Stickney, and Clemons. Dkt. No. 87 at 16. The following claims Plaintiff

remaining claims arise from a series of grievances filed by Plaintiff on subjects ranging from cell searches, disciplinary hearings, conditions of confinement, confiscation of property, and retaliation. See Dkt. No. 87. Plaintiff now brings claims against the following defendants: Bullis, Bezio, Prack, Minard, Brown, Devlin, Keysor, Kirkpatrick, Mcintosh, Racette, Lee, Delisle, Orzech, Randall, Rief, and Donald Venettozzi (collectively, "Defendants"). Dkt. No. 87.

Now before the Court is Defendants' second motion for summary judgment. Dkt. No. 94 ("Second Motion"). The Court granted Plaintiff several extensions to respond to Defendants' Second Motion, but Plaintiff failed to file a response. See Dkt. Nos. 96, 101, 106, 108. For the reasons that follow, Defendants' second motion for summary judgment is granted in part and denied in part.

## II.    BACKGROUND

### A. Factual Background

The following facts are taken from evidence submitted by Defendants, Plaintiff's deposition, Dkt. No. 68-13 ("Pl.'s Dep."), Plaintiff's Amended Complaint, and Defendants' statement of material facts. Dkt. No. 94-2 ("Defendants' Second Statement of Material Facts"). Plaintiff has not filed a response to Defendants' Second Statement of Material Facts as required under L.R. 56.1(b). See generally Docket. The facts recited deal only with those relevant to Defendants' second summary judgment motion. Facts unrelated to the current motion are comprehensively detailed in Judge Hummel's Report and Recommendation ("R&R"), see Dkt. No. 83 at 4–34, and Defendants' first summary judgment motion, Dkt. No. 68-3.

---

asserted were also dismissed with prejudice: (1) First Amendment retaliation claims against Orzech, Mailloux, Randall, Gadway, Lee, Beaudette, Delisle, Stickney, and Adams; (2) a First Amendment claim against Delisle; (3) a First Amendment mail tampering claim against Clemons; and (4) an Eighth Amendment medical indifference claim against Gillani. Id.

    *1. Withholding of Plaintiff's Property*

At all times relevant to this action, Plaintiff was incarcerated at Clinton C.F. Dkt. No.1 at 2. On April 17, 2014, four bags of Plaintiff's property were transferred to Clinton C.F. from Attica C.F. but were mislabeled. Dkt. No. 68-30, Orzech Decl. at 2. About a week later, Orzech instructed Mailloux to escort Plaintiff to an area where Plaintiff could observe the rest of his property being processed. Id. at 2–3. During processing, Orzech informed Plaintiff that some of Plaintiff's property was detained at Attica C.F. Id. at 3. In response, Plaintiff contends that he calmly explained to Mailloux that he was entitled to certain property he believed should not be withheld from him and suggested that withholding of his property would prompt him to file a grievance. Pl.'s Dep. at 65. Plaintiff testified that Mailloux—also present with Orzech during processing—became angry and started screaming when Plaintiff mentioned the prospect of filing a grievance. Id. Conversely, Orzech testified that Plaintiff—not Mailloux—was the one who became upset and aggressive during the processing when he learned that receipt of his property would be delayed. Orzech Decl. at 2–3. As a result, Orzech removed Plaintiff from the area. Id.

Following this incident, Plaintiff testified that he repeatedly asked Randall for his property back, Pl.'s Dep. at 58, but Randall refused, and grew angry at Plaintiff's insistence. Id. Plaintiff was later transferred to SHU Cell 13 ("Cell 13"), which he alleged was dirty and uninhabitable. Id. at 72. Plaintiff testified that Cell 13 was covered in feces and urine. Id. at 23. Plaintiff also testified that he was denied cleaning supplies to clean the feces and urine for forty days. Id. Thereafter, on May 1, 2014, Plaintiff filed a grievance against Randall for transferring Plaintiff to Cell 13, alleging that Randall had acted in a retaliatory manner because Plaintiff demanded his property back. Id. at 87–88. Over the course of his stay in Cell 13, Plaintiff testified that he complained to Rief and Brown more than ten times about the unsanitary

4

conditions of Cell 13, including the buildup of days-old feces and urine from previous occupants. Id. at 23.

2. *Cell Searches*

During Plaintiff's tenure at Clinton C.F., he started a business known as Madison Avenue Entertainment Group ("Madison"). Pl.'s Dep. at 46. Plaintiff expected to use the money from the business to fund his legal defense for alleged constitutional violations by other prison officials. Id. Plaintiff made several attempts seeking permission to start Madison, but according to Plaintiff, Defendants were evasive and non-responsive. Id. at 19–20. Eventually, Plaintiff started the group without permission from Defendants. Id. at 20.

After Delisle and Stickney became aware of Madison, they searched Plaintiff's cell and confiscated a bevy of personal and legal documents, and proceeded to issue two misbehavior reports, on suspicion of Plaintiff running an unauthorized business. Dkt. No. 68-33, Decl. of Stickney ¶¶ 6–7. Then, on July 18, 2014, Gadway performed a search of Plaintiff's cell, where Gadway confiscated several documents relating to Madison. Dkt. No. 68-23, Decl. of Gadway ¶¶ 8–9. Plaintiff's possession of these documents contravened DOCCS directives. Id. ¶8. Plaintiff alleges that Gadway's search was retaliation for Plaintiff filing grievances against other officers. Pl.'s Dep. at 56, 68. Plaintiff testified that Gadway also filed a false misbehavior report about Plaintiff in retaliation. Id. at 68. Plaintiff later filed a grievance against Gadway, which Racette denied. Moreover, Plaintiff alleges that on November 24, 2015, Beaudette instructed non-party Myers to deny Plaintiff a shower for filing grievances. Am. Compl. at 45. In response, Plaintiff filed a grievance against Beaudette. Id. at 63.

In May 2015, Lee searched Plaintiff's cell and confiscated multiple copies of Plaintiff's magazines. Pl.'s Dep. at 75. As a result, Plaintiff filed a grievance against Lee, which

Kirkpatrick denied. On June 19, 2015, and July 12, 2015, Lee conducted additional searches of

Plaintiff's cell, and threw away magazine articles Plaintiff had been collecting to support his

litigation efforts. Am. Compl. at 32. Lee specifically confiscated 49 magazines and 11 books,

advising Plaintiff that he needed to send them home because Plaintiff exceeded the property

limits. Id. at 35. With respect to the July 12, 2015, search, Plaintiff became angry at Lee, and

shouted that he was "gonna violate [Lee] every chance [he] got." Id. at 43. As a result, Lee filed

a misbehavior report that resulted in Plaintiff being moved to a cell with a plexiglass shield on

the door. The "shield order" was reevaluated three times, once by Delisle, and twice by Orzech;

the shield order was authorized by an unknown higher ranking DOCCS official. Defs.' SMF ¶5.

### 3. Cell Shield

On August 13, 2015, Plaintiff filed a grievance related to the plastic plexiglass shield

erected in front of his cell. Pl.'s Dep.at 62. Specifically, Plaintiff repeatedly complained that

Delisle and Orzech refused to clean the plastic shield covering his cell, which eventually

accumulated mouse droppings, cobwebs, and dirty food. Pl.'s Dep. at 84. Plaintiff testified that

the shield insulated his cell—making it exceedingly hot—and resulted in temperatures of 100

degrees. Id. at 87.

### 4. Disciplinary Hearings

Over the course of these incidents, Plaintiff attended six disciplinary hearings. See Defs.'

Sec. Mem. at 14 ("Defendants' Second Memorandum of Law"). Two hearings occurred on July

7, 2014, and July 31, 2014, relating to Gadway's misbehavior report about Plaintiff's possession

of unauthorized documents. Id. Each of these hearings was commenced by Bullis. Id. Later, on

August 7, 2015, Devlin initiated hearings regarding threats Plaintiff made against Lee. Id. On

April 27, 2016, Minard presided over a disciplinary hearing concerning incident and misbehavior

reports authored by Beaudette. Id. at 22. Additionally, Minard presided over a second hearing on May 20, 2016, with respect to misbehavior reports by Stickney and Delisle. Id. Finally, Minard presided over a third disciplinary hearing in February 2017 involving a January 17, 2017, misbehavior report written by Clemons. Id. at 24. Plaintiff alleges that these hearings deprived him of due process in violation of the Fourteenth Amendment. Id.

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 56 instructs courts to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is "'genuine'. . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, while "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.; see also Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991) ("Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted."). The party seeking summary judgment bears the burden of informing the court of the basis for the motion and identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Similarly, a party is entitled to summary judgment when the nonmoving party carries the ultimate burden of proof and has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

Additionally, "[i]f the evidence adduced in support of the summary judgment motion does not meet this burden, summary judgment must be denied *even if no opposing evidentiary matter is presented*." Amaker v. Foley, 274 F.3d 677, 681 (2d. Cir. 2001) (emphasis in original) (internal citations omitted) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144 (1970)). "Thus, it is clear that even when a nonmoving party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." Amaker, 274 F.3d at 681.

In attempting to defeat a motion for summary judgment after the moving party has met its initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party may not rely on mere conclusory allegations, speculation, or conjecture, see Fischer v. Forrest, 968 F.3d 216, 221 (2d Cir. 2020), and must present more than a mere "scintilla of evidence" supporting its claims, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). A court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). Thus, a court's duty in reviewing a motion for summary judgment is "carefully limited" to finding genuine disputes of material fact, "not to deciding them." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

However, it is well-established in this District and the Second Circuit, that district courts need not perform an independent review of the record to find proof of a factual dispute: "It is not this Court's function to filter through [the record] in an attempt to find plaintiffs' claimed. . . issues of fact. Lawyering is to be done by lawyers, not the Court." Prestopnik v. Whelan, 253 F.

Supp. 2d 369. 371–72 (N.D.N.Y) (quoting Badlam v. Reynolds Metals, Co., 46 F. Supp. 2d 187, 193 n.2 (N.D.N.Y. 1999)); Jackson v. Onondaga Cnty, 549 F. Supp. 2d 204, 209 (N.D.N.Y. 2008) (finding "[w]here a non-movant fails to adequately oppose a properly supported factual assertion made in a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute"); Amnesty Am. v. Town of W. Hartford, 288 F.3d 467, 470 (2d Cir. 2002) ("Fed.R.Civ.P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.").

Because Plaintiff has failed to comply with Local Rule 56.1(b),[3] the Court will not perform an independent review of the record to pursue proof of material factual disputes unless Defendant cites to admissible testimony made by Plaintiff that specifically creates a genuine dispute of material fact. As L.R. 56.1(b) instructs: "The Court may deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert."

## IV.   DISCUSSION

Defendants raise several arguments in their Second Motion. First, Defendants argue that Plaintiff's claims against Bezio, Bullis, Minard, and Prack should be dismissed because Plaintiff has failed to timely serve them. See Defs.' Sec. Mem. at 1. Second, Defendants contend that Plaintiff's First Amendment retaliation claims premised on supervisory liability against Brown, Devlin, Keysor, Kirkpatrick, Mcintosh and Racette must be dismissed because the Court has

---

[3] "The opposing party shall file a separate Response to the Statement of Material Facts. The opposing party response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in a short and concise statement, in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises." L.R. 56.1(b).

already dismissed the underlying claims against other previously terminated defendants. Id.; see also Dkt. No. 17 at 47. Third, Defendants claim that Plaintiff's Eighth Amendment claim against Lee, Orzech, and Delisle relating to the cell shield should be dismissed because (1) Lee, Orzech, and Deslisle lacked the authority to place or remove the cell shield; (2) the cell shield was rightfully implemented because of Plaintiff's threat to "violate" Lee; (3) the cell shield was maintained in a manner that was not as unsanitary as Plaintiff claims; and (4) the condition of the shield does not rise to the level warranting constitutional protection. Defs.' Sec. Mem. at 3–5. Fourth, Defendants assert that Plaintiff's First Amendment mail interference claim against Lee should be dismissed because similar claims relating to the alleged conduct of Lee have been dismissed. Id. at 6–7. Fifth, Defendants state that Plaintiff's Eighth Amendment conditions of confinement claim regarding Cell 13 against Randall, Rief, and Brown should be dismissed because Plaintiff failed to plead the objective and subjective elements of his claim, neglected to timely complain about the cell, and was afforded the opportunity to clean his cell. Id. at 7–9. Sixth, Defendants posit that Plaintiff's Fourteenth Amendment claims against Bullis, Devlin, Minard, Racette, Prack, Bezio, Venettozzi, and Kirkpatrick regarding six disciplinary hearings must be dismissed because the proceedings were not constitutionally deficient under the Fourteenth Amendment. Id. at 9–23. Finally, Defendants argue that Plaintiff's Eighth Amendment conditions of confinement claim against Miller, Venettozzi, and Zerniak should be dismissed because Plaintiff failed to properly support the objective and subjective elements of his claim. Id. at 25. The Court considers these arguments in turn.

### A. Plaintiff's Claims Against Bezio, Bullis, Minard, and Prack

Defendants Bezio, Bullis, Minard, and Prack seek to dismiss Plaintiff's claims against them because they assert that Plaintiff has failed to properly effect service upon them. See Defs.'

Sec. Mem. at 1. Specifically, Defendants argue that "the U.S. Marshals Service advised the Court

and Plaintiff that its attempted service on Defendants Bezio, Bullis, Minard and Prack was

unsuccessful and that Plaintiff was required to advise the U.S. Marshals Service if Plaintiff

wished for additional service efforts to be made with regard to these Defendants." Id.

Defendants appear to argue that Plaintiff failed to comply with Rule 4(m) of the Federal Rules of

Civil Procedure. Under Rule 4(m):

> If a defendant is not served within 90 days after the complaint is
> filed, the court—on motion or on its own after notice to the
> plaintiff—must dismiss the action without prejudice against that
> defendant or order that service be made within a specified time. But
> if the plaintiff shows good cause for the failure, the court must
> extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). Accordingly, Defendants appear to bring a motion to dismiss pursuant to

Rule 12(b)(5) of the Federal Rules of Civil Procedure, for insufficient service of process.

Critically, however, Defendants have failed to comply with Local Rule 7.1(b)(1). In

relevant part, L.R. 7.1(b)(1) provides: "When a moving party makes a motion based upon a rule

or statute, *the moving party must specify* in its moving papers the *rule or statute* upon which it

bases its motion." L.R. 7.1(b)(1) (emphasis added). Additionally, "A memorandum of law is

required for *all* motions except" for motions made pursuant to Fed. R. Civ. P. 12(e), 17, 25, 37,

and 55. See id. (emphasis added).

Here, Defendants have failed to elucidate under which Federal Rule of Civil Procedure

they are seeking to bring a motion to dismiss with regard to Plaintiff's claims against Bezio,

Bullis, Minard, and Prack. This omission contravenes L.R. 7.1 (b)(1). Moreover, even if the

Court liberally construes Defendants' arguments as seeking to bring a Fed. R. Civ. P. 12(b)(5)

motion, Defendants have failed to provide a memorandum of law in support of this motion.

"Failure to submit a memorandum of law, standing alone, is sufficient cause for granting or

denying a motion." <u>Lynch v. City of Little Falls</u>, No. 620-CV-0604, 2022 WL 773273, at *3 n.2

(N.D.N.Y. Mar. 14, 2022) (citing <u>Wenzhou Wanli Food Co. v. Hop Chong Trading Co., Inc.</u>,

No. 98-CV-84191, 2000 WL 964944, at *3 (S.D.N.Y. July 11, 2000)).

 Instead, Defendants merely add this section regarding Plaintiff's allegedly deficient

service of process as an afterthought to their broader motion for summary judgment. This does

not accord with the Local Rules. "The Local Rules are not empty formalities . . . Local Rules,

such as 7.1(a), 7.1(a)(3), 7.1(b)(1)(B), and 7.1(b)(3), 'serve to notify the parties of the factual

support for their opponent's arguments . . .' A party's failure to comply with these rules is

fundamentally unfair to the opposing party." <u>Kilmer v. Flocar, Inc.</u>, 212 F.R.D. 66, 69 (N.D.N.Y.

2002). Therefore, because Bezio, Bullis, Minard, and Prack failed to comply with the Local

Rules when seeking dismissal of Plaintiff's claims against them, their attempt to bring a motion

to dismiss for insufficient service of process is denied.

### B. Plaintiff's First Amendment Retaliation Claims against Brown, Devlin, Keysor, Kirkpatrick, Mcintosh, and Racette

 The Court previously construed Plaintiff's claims against Brown, Devlin, Keysor,

Kirkpatrick, McIntosh, and Racette under a theory of supervisory liability with respect to

Plaintiff's various First Amendment retaliation claims. <u>See</u> Dkt. No. 17 at 51. Specifically,

because Plaintiff asserted that these Defendants investigated and denied grievances in connection

with Plaintiff's First Amendment retaliation claims against Orzech, Mallioux, Randall, Gadway,

Lee, Stickney, Delisle, Beaudette, K. Delisle and Adams, the Court found a plausible claim of

First Amendment retaliation concerning the Defendants at issue here. Dkt. No. 17 at 47.

 Defendants observe that Plaintiff's First Amendment supervisory claims against Racette,

Brown, Keysor, Devlin, McIntosh and Kirkpatrick are premised upon First Amendment

retaliation claims against Orzech, Mallioux, Randall, Gadway, Lee, Stickney, Delisle, Beaudette,

K. Delisle, and Adams. See Defs.' Sec. SMF at 1. And Defendants correctly note that this Court has already dismissed Plaintiff's First Amendment retaliation claims against those same defendants. See Dkt. No. 87, Decision & Order; R&R at 71; see also id. at 40–45 (dismissing retaliation claims against Orzech and Mailloux); 45–50 (dismissing retaliation claims against Randall); 50–52 (dismissing retaliation claims against Gadway); 52–57 (dismissing retaliation claims against Lee); 57–59 (dismissing retaliation claims against Beaudette); 59–60 (dismissing retaliation claims against Delisle); 59–60 (dismissing retaliation claims against Stickney); 60–62 (dismissing retaliation claims against K. Delisle); 62–64 (dismissing retaliation claims against Adams).

The question for the Court, then, is whether, as a matter of law, a supervisor can be held liable for the actions or omissions of a subordinate without an underlying constitutional violation. Here, the answer is no. The Second Circuit has previously held: "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" Tangreti v. Bachmann, 983 F.3d 609, 618 (2d Cir. 2020) (quoting Ashcroft v. Iqbal ,566 U.S. 662, 677 (2009).

Here, Plaintiff has failed to provide evidence of individual First Amendment retaliation violations by Brown, Devlin, Keysor, Kirkpatrick, McIntosh, and Racette. See generally Docket. Additionally, the Court has already indicated in a previous order that their subordinates' actions did not violate the First Amendment. See Dkt. No. 87, Decision & Order at 5–11. Accordingly, there can be no supervisory First Amendment retaliation claim because Plaintiff has failed to show how the Defendants' (i.e., Brown, Devlin, Keysor, Kirkpatrick, McIntosh, and Racette) "own individual actions" violated the Constitution. Tangretti, 983 F.3d at 618. As a result, the

Court finds that Defendants Brown, Devlin, Keysor, Kirkpatrick, McIntosh, and Racette are entitled to summary judgment regarding Plaintiff's First Amendment retaliation claims.

### C.  Plaintiff's Eighth Amendment Claims Regarding the Shield Order Against Lee, Delisle, and. Orzech

Lee, Delisle, and Orzech argue that they are entitled to summary judgment with respect to Plaintiff's Eighth Amendment claim relating to the so-called shield order (i.e., the plexiglass shield placed in front of Plaintiff's cell). Defs.' Sec. Mem. at 3. In particular, they raise five arguments. First, they argue that there is "no allegation in any of Plaintiff's papers that either Officer Lee, Delisle or Orzech had the authority to place or remove a cell shield . . . [Plaintiff] never alleged that Officer Lee had the authority to put the shield into place, or that Sgt. Delisle or Sgt. Orzech had the authority to have it removed." Id. at 4. Second, Defendants argue that the shield was erected to protect Lee from threats of "violat[ion]" by Plaintiff. Id. Third, they argue that an inspection by the prison's grievance program indicated that the cell shield was not in the same unclean condition that Plaintiff alleges. Defs.' Sec. SMF at at 4–5. Fourth, Defendants argue that any issues Plaintiff experienced were resolved within a month. Id. at 5. Fifth, they argue that the condition of the cell shield—namely that it contained a dirty hatch from food residue—does not rise to the level of an Eighth Amendment claim. Id. at 5.

Lee, Delisle, and Orzech's statement concerning their lack of authority to authorize placement of the cell shield is the most relevant here. Specifically, they state that the cell shield placement was authorized by an individual ranking higher than them. See Defs.' Sec. SMF at 2. Importantly, the Second Circuit has made clear that, "[i]t is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Farrell v. Burke, 449 F.3d 470 (2d Cir. 2006) (citing Wright v. Smith, 21 F.3d 496, 501 (2d Cir.1994)). The Court has already concluded that Lee lacked

14

personal involvement in the cell shield order. See Dkt. No. 87, Decision & Order at 8. The Court also found in a previous order that an officer ranking above Lee was responsible for authorizing and removing the cell shield. See id; see also R&R at 53. Moreover, Defendants contend without dispute that Delisle and Orzech lacked authority to authorize and enforce the shield placed on Plaintiff's cell. Defs.' Sec. SMF at 2. Therefore, because Plaintiff has failed to provide evidence showing the personal involvement of Lee, Delisle, and Orzech in authorizing the cell shield placement—a prerequisite to an award of damages under Section 1983—the Court need not address Defendants' other arguments. Therefore, Defendants' motion for summary judgment is granted with respect to Plaintiff's Eighth Amendment cell shield claim against Lee, Delisle, and Orzech.

### D.  Plaintiff's First Amendment Mail Interference Claim Against Lee

Lee contends that he is entitled to summary judgment regarding Plaintiff's First Amendment mail interference claim. To state a claim for First Amendment legal mail interference, "the inmate must show that prison officials regularly and unjustifiably interfered with the incoming legal mail." Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003) (internal quotations omitted). In Goord, the Second Circuit found that "two instances of mail interference are insufficient to state a claim for denial of access to the courts" when the plaintiff "has not alleged that the interference with his mail either constituted an ongoing practice of unjustified censorship or caused him to miss court deadlines or in any way prejudiced his legal actions." Id. at 352. Lee argues that he never interfered with Plaintiff's receipt or transmission of mail, but instead conducted authorized searches of Plaintiff's cell in accordance with DOCCS rules and regulations. See Defs.' Sec. SMF at 2.

Lee points out that the First Amendment mail-watch claims pursued by Plaintiff pertained only to non-party Clemons,[4] not Lee. See Defs.' Sec. Mem. at 6. The claims against Lee were based on cell searches that Lee performed in May, June, and July 2015 which resulted in the loss of Plaintiff's personal property. Id. Thus, the claims against Lee deal only with confiscation of personal property unrelated to Plaintiff's mail. Id. Plaintiff has not provided the Court with any evidence of how Lee interfered with his *mail*. See generally Docket. As a result, Lee's motion for summary judgment with respect to Plaintiff's First Amendment mail interference claim is granted.

**E. Plaintiff's Eighth Amendment Conditions of Confinement Claim Regarding Cell 13 Against Randall, Rief, and Brown**

Defendants Randall, Rief, and Brown next urge the Court to grant summary judgment with respect to Plaintiff's Eighth Amendment conditions of confinement claim related to Plaintiff's time spent in Cell 13. See Defs.' Sec. Mem. at 10.

The Eighth Amendment protects prisoners from cruel and unusual punishment by prison officials. Wilson v. Seiter, 501 U.S. 294, 296–97 (1991). To establish an Eighth Amendment claim, a plaintiff must show both an objective component, "a deprivation that is objectively, sufficiently serious… [,]" and a subjective component requiring that the defendant official have "a sufficiently culpable state of mind." Hayes v. Dahlke, 976 F.3d 259, 274 (2d Cir. 2020); see also Hudson v. McMillian, 503 U.S. 1, 7 (1992).

The Second Circuit has held that unsanitary conditions in a prison cell can, in egregious circumstances, rise to the level of cruel and unusual punishment. See Walker v. Schult, 717 F.3d 119 (2d Cir. 2013) (citing Lareau v. Manson, 651 F.2d 96, 106 (2d Cir.1981)). Indeed, the

---

[4] The Court previously terminated Clemons from this action. See supra note 2.

Second Circuit has repeatedly confirmed that unsanitary prison conditions, even absent physical effects on prisoners, are actionable under the Eighth Amendment if sufficiently egregious. See LaReau v. MacDougall, 473 F.2d 974, 978 (2d Cir.1972) ("Causing a man to live, eat and perhaps sleep in close confines with his own human waste is too debasing and degrading to be permitted"); Gaston v. Coughlin 249 F.3d 156, 165 (holding that an inmate stated an Eighth Amendment claim where the area in front of his cell "was filled with human feces, urine, and sewage water" for several consecutive days); Wright v. McMann, 387 F.2d 519, 522 (2d. Cir. 1967) (placement of prisoner for thirty-three days in cell that was "fetid and reeking from the stench of the bodily wastes of previous occupants which . . . covered the floor, the sink, and the toilet," would violate the Eighth Amendment).

The subjective element of an Eighth Amendment violation is met when prison officials "know of, and disregard, an excessive risk to inmate health or safety." Jabbar v. Fischer, 683 F.3d 54, 57 (2d Cir. 2012). This standard has been met when prison officials were informed "four times about the [alleged] unconstitutional [conditions of an inmate's cell]" and did nothing to remedy them. Walker, 717 F.3d at 129. Additionally, the act of prison guards "[making] daily rounds of SHU" cells was sufficient to establish that the defendants had actual knowledge of inhumane conditions under the subjective prong. See Gaston, 249 F.3d at 166.

Here, Defendants provide evidence that Cell 13—the cell which Plaintiff has made the subject of this Eighth Amendment claim—was in normal use. Randall Decl. ¶ 6. In addition, Defendants state that Plaintiff was provided cleaning supplies three times a week to address any hygienic deficiencies in his cell. Id. Defendants also direct the Court to Plaintiff's deposition which conceded that Plaintiff suffered no physical injuries from Cell 13. See Defs.' Sec. Mem. at 8 (citing Pl.'s Dep. at 31).

17

Although it is "not the Court's function to filter through [the record] in an attempt to find Plaintiffs' claimed . . . issues of fact," Prestopnik, 253 F. Supp. 2d 371–72, the Court declines to ignore obvious genuine disputes of material fact to which Defendants themselves allude. Specifically, Defendants cite to Plaintiff's deposition that relays Plaintiff's description of Cell 13, which appears partially favorable to Defendants. See Defs.' Sec. Mem. at 11. However, Defendants neglect to point out that Plaintiff also notes the additional conditions of Cell 13 in the very same section of his deposition. Plaintiff testified

> [I]nside the toilet was feces and urine that was there for probably days or weeks. I had to clean the basin of the toilet. They would not give me any cleaning materials to clean it. I had to go through so many days to try to get attention. At one point I couldn't take the smell so I attempted suicide to get out of the cell so that they [would] move me to the M.H.U. unit so that I didn't take the – have to take the smell inside of the cell. But they were – they never gave me any cleaning materials for that stuff.

Pl.'s Dep. at 23. Plaintiff further testified that the cell was "contaminated with human feces" and was "dark." Id. at 22. Plaintiff also testified that he endured these conditions for forty days, alerted Rief about these issues, "[m]ore than 10 times," and told Brown "at least more than five times." Id. at 29. Moreover, Plaintiff added, "I stopped [Brown and Rief] on several occasions when [they] was making rounds in the SHU. I pointed out the smell that was coming from it . . . You know, the bad conditions . . . I showed them all these things. They stood there. They looked at it for a while, they examined it and they already knew about this stuff because they've been working there for years. So it's not like it was [new] to them, and they just did nothing about it." Id. at 28.

Defendants, conversely, testify that Cell 13 "was regularly maintained," and that Plaintiff was "afforded the opportunity for additional cleaning supplies on Tuesdays, Thursdays, and Saturdays weekly." Randall Decl. ¶ 6. However, weighing of testimony and determination of

credibility are not within the purview of a court on a motion for summary judgment. See Redd v. N.Y. State Div. of Parole, 678 F.3d 166, 174 (2d Cir. 2012) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."). Additionally, Plaintiff's allegations "are not conclusory or speculative, rather, they testify to events that allegedly happened in Plaintiff's presence that he observed directly." Lewis v. Hanson, No. 18-CV-0012, 2022 WL 991729, at *8 (N.D.N.Y. Mar. 31, 2022) (citing Fincher v. Depository Tr. & Clearing Corp., 604 F.3d 712, 726 (2d Cir. 2010)).

Thus, a reasonable jury could believe Plaintiff's assertions that Randall, Rief, and Brown knowingly subjected Plaintiff to feces-covered living conditions for 40 days without the opportunity to clean his cell. See Franklin v. Oneida Corr. Facility, No. 03-CV-1452, 2008 WL 2690243, at *9 (N.D.N.Y. July 1, 2008) (Kahn, J.) ("As tempting as it may be to conclude that defendants will ultimately prevail at trial, defendants' invitation to make a credibility determination and reject plaintiff's version of the events on motion for summary judgment is plainly unwarranted"); Cicio v. Lamora, No. 08-CV-431, 2010 WL 1063875, at *8 (N.D.N.Y. Feb. 24, 2010), rep. rec. adopted, 2010 WL 1063864 (N.D.N.Y. Mar. 22, 2010) ("Plaintiff's testimony that he was beaten by [defendant] stands in contrast to the seemingly overwhelming evidence that it did not occur as he alleges. Nonetheless, the weighing of such competing evidence, no matter how weak plaintiff's claim may appear, presents a question of credibility that must be left to the trier of fact."); see also Harris v. Miller, 818 F.3d 49, 65 (2d Cir. 2016) (holding summary judgment is inappropriate where "a prisoner's allegations and evidentiary proffers could reasonably, if credited, allow a rational factfinder to find that corrections officers used force maliciously and sadistically . . . [even where] the proof of excessive force [is] weak").

Consequently, there exists a genuine dispute of material fact regarding the objective conditions of Cell 13 and Defendants' subjective state of mind. The Court finds that a reasonable jury could credit Plaintiff's testimony that Defendants knowingly subjected him to feces-covered living conditions for 40 days without the opportunity to clean his cell. The Court thus denies Randall, Rief, and Brown's motion for summary judgment regarding Plaintiff's Eighth Amendment conditions of confinement claim regarding Cell 13.

**F. Plaintiff's Fourteenth Amendment Procedural Due Process Claims against Bullis, Devlin, Minard, Racette, Prack, Bezio, Venettozzi and Kirkpatrick Regarding Six Disciplinary Hearings**

The Due Process Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deprive any person of life, liberty, or property without due process of law." U.S. Const., amend. XIV. To show a procedural due process violation in a Section 1983 action, a plaintiff must demonstrate that he had a protected liberty interest and that he was deprived of that liberty interest without due process of law. See Giano v. Selsky, 238 F.3d 223, 225 (2d Cir. 2001); Tellier v. Fields, 280 F.3d 69, 79–80 (2d Cir. 2000). A prisoner's protected liberty interest is implicated where the punishment at issue imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).

"When a prison disciplinary hearing may impose a punishment sufficient to trigger due process protections, 'the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.'" Washington v. Gonyea, 538 Fed. App'x 23, 25 (2d Cir. 2013) (quoting Superintendent v. Hill, 472 U.S. 445, 454 (1985)). In addition, "due process requires 'that there be some evidence to support the

findings made in the disciplinary hearing.'" <u>Zavaro v. Coughlin</u>, 970 F.2d 1148, 1152 (2d Cir. 1992). "[T]he relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." <u>Superintendent, Massachusetts Corr. Inst., Walpole v. Hill</u>, 472 U.S. 445, 447 (1985) (emphasis added).

Plaintiff alleges due process violations against Bullis, Devlin, Minard, Racette, Prack, Bezio, Venettozzi, and Kirkpatrick ("Hearing Defendants"). The claims concern: (a) two hearings conducted by Bullis in July 2014; (b) a hearing conducted by Devlin in August 2015; and (c) three hearings conducted by Minard in April 2016, May 2016, and February 2017. The Court addresses each in turn.

### 1. *July 7, 2014, Hearings Conducted by Bullis*

Plaintiff contends that his due process rights were violated at the July 7, 2014, disciplinary hearing resulting from a soliciting and facility correspondence violation. <u>See</u> Defs.' Sec. Mem. at 16; Plaintiff was accused of mailing and possessing unauthorized documents. <u>Id.</u> Plaintiff specifically contends that: (1) the hearing was not completed within 14 days of the writing of the misbehavior report; (2) he was not granted the right to call a specific witness (Deputy Hughes of Attica C.F.); (3) attempts to contact Hughes by telephone to testify were improperly done by defendants; and (4) the hearing officer should have credited Plaintiff's version of facts concerning the possession of materials at Attica C.F. in the absence of testimony by Hughes. <u>See</u> Pl.'s Am. Compl. at 18–22.

Additionally, Plaintiff argues that (1) the evidence was insufficient to support the charges of solicitation and facility correspondence violations because there was no evidence that he mailed the documents out of Clinton C.F.; (2) he was allowed to possess the documents in question because they had already made their way to his cell; (3) his right to run a legitimate

business out of a prison was protected by the First Amendment; (4) Gadway lacked authorization from the Superintendent to read Plaintiff's mail; and (5) Gadway improperly filed a misbehavior report. Id. Plaintiff claims that Bullis, the presiding hearing officer, is liable for the alleged due process deprivations because he assessed the penalty in connection with each hearing, and that Racette and Prack are liable because they affirmed Bullis's determinations. Id.

The Court begins by observing that Plaintiff has failed to produce evidence in support of his due process allegations. See generally Dkt. As a result, the Court considers only the Hearing Defendants' recollection of the facts.

Hearing Defendants first point out they afforded Plaintiff assistance prior to the hearing, provided Plaintiff with the documents underlying the claims against him, and granted Plaintiff an opportunity to question both Gadway and Racette. See Dkt. No. 94-4, Matula, Ex. A at 150, 153, 163; Dkt. No. 94-5, Matula Aff. at 436, 448, 455. Hearing Defendants next argue that there was ample evidence to support the allegations against Plaintiff that he was running an unauthorized business. Dkt. No. 94-5 Matula Aff. at 448, 452. Specifically, Gadway testified that he was authorized by his supervisor to do a cell search frisk, and as a result, found documents leading him to believe that Plaintiff was running a business. Id. Gadway confirmed that the records that were included with the misbehavior report were the documents confiscated from Plaintiff's cell, id. at 448, and the hearing officer stated on the record that Plaintiff was provided an opportunity to review the documents at issue. See id. Regarding Plaintiff's business claims, Racette testified at the hearing that he never authorized Plaintiff to conduct a business in the facility. See id. at 454. In fact, Plaintiff never actually claimed that Racette allowed him to run a business at Clinton C.F. See Dkt. No. 94-5 Matula Aff. at 464, 466, 467, 469.

During the hearing, Plaintiff alleged that in 2012—two years prior to the hearing—that he had a conversation with Hughes that confirmed that the two "had an understanding" at Attica C.F. about Plaintiff being permitted to operate a business. See Dkt. No. 94-5, Matula Aff. at 459. Plaintiff claimed that the basis for having Hughes testify was to establish that Plaintiff was allowed to have the same documents in Attica C.F. that were unauthorized in Clinton C.F.

However, Plaintiff conceded in his hearing, that Hughes never explicitly authorized him to run a business. See Dkt. No. 94-5, Matula Aff. At 464, 466. Moreover, Plaintiff was permitted several adjournments to contact Hughes, which ultimately proved unsuccessful. See Defs.' Sec. Mem. at 16. In fact, to help Plaintiff, Bullis made efforts himself to obtain the testimony of Hughes, albeit unsuccessfully. See Dkt. No. 94-5, Matula Aff. at 470, 472.

Additionally, the hearing officer noted on the record that the unauthorized documents in his possession appeared to be "photo or carbon copies" and not the originals, suggesting that he believed Plaintiff mailed the original documents, in violation of DOCCS policy. See id. at 439. Hearing Defendants also note that following the hearing, the hearing officer set forth a detailed explanation as to the basis for his determination and the reasons for his disposition. Matula Aff., Ex. A. at 151. In support of the six-month assessment of SHU time, the hearing officer cited to Plaintiff's disciplinary history, which included nine prior violations for solicitation, and ten prior facility correspondence violations. See id. Plaintiff was provided with a copy of the disposition and read the disposition on the record. See Dkt. No. 94-5, Matula Aff. at 473–74. Plaintiff was also advised of his appellate rights. Id. On September 19, 2014, Plaintiff's hearing was reviewed and modified. Plaintiff's SHU time was limited to four months, with two months suspended. See Dkt. No. 94-4, Matula Aff at 147.

Based on these undisputed facts, the Court concludes that Plaintiff has failed to show that his due process rights were violated at the July 7 hearing. Plaintiff was afforded ample notice with respect to the charges against him; evidence from multiple prison employees supported the allegations against him; Plaintiff was permitted to question Gadway and Racette; and Plaintiff was afforded several adjournments to gather evidence that he ultimately failed to produce.[5] <u>See</u> Defs.'Sec. Mem. at 16. Additionally, Plaintiff was provided with a detailed report explaining the reasoning and findings of the hearing's disposition. <u>See</u> Matula Aff., Ex. B at 473-74. As a result, there exists no genuine dispute of material fact regarding whether Plaintiff's due process rights were violated at the July 7, 2014, hearing.

### 2. July 31, 2014, Hearing

On July 31, 2014, Bullis held a disciplinary hearing regarding confiscated documents that Gadway seized from Plaintiff's cell. <u>See</u> Dkt. No. 94-6, Matula Aff., Ex. C at 166. Plaintiff was charged with a solicitation and facility correspondence violation. <u>See</u> <u>id.</u> at 169. Plaintiff was afforded assistance with his hearing by Defendants but did not request any witnesses. <u>See</u> <u>id.</u> at 172, 187.

Plaintiff raised several defenses at the hearing. First, Plaintiff argued that the confiscated documents should have been reviewed by the facility's media review office rather than having a ticket issued. <u>See</u> Defs.' Sec. Mem. at 19. Second, Plaintiff claimed he never mailed any documents out (since the documents were in his cell). <u>Id.</u> Third, Plaintiff claimed that there was no mail watch order justifying the alleged mail interference from Lee. <u>Id.</u>

---

[5] Even if Plaintiff's allegations are accurate regarding his "understanding" with Hughes, Plaintiff fails to point to any rule, regulation, or statute that would permit Plaintiff to use documents authorized in one prison in any other prison. <u>See generally</u> Pl.'s Am. Compl.

Like the July 7 hearing, nothing in the record suggests a deprivation of due process. Hearing Defendants afforded Plaintiff assistance with his defenses, Defs' Sec. Mem. at 19. Moreover, Plaintiff did not provide witnesses or evidence at the hearing supporting his defenses against Gadway's *uncontested* misbehavior report concerning Plaintiff's violations that would suggest that Defendants lacked evidence, see Ex. D, Hearing Transcript at 8; see also Hill, 472 U.S. at 447 (requiring prison disciplinary hearings to be supported by "any evidence"). In addition, Plaintiff was advised of his appellate rights, and the outcome of the hearing's disposition was explained to Plaintiff on the record. Ex. D, Hearing Transcript at 8-9. Therefore, there exists no genuine dispute of material fact regarding whether Plaintiff's due process rights were violated at the July 31, 2014, hearing.

### 3. *August 7, 2015, Hearing*

Plaintiff also alleges due process violations with respect to the August 7, 2015, hearing. Am. Compl. at 34. This hearing stemmed from various allegations reported by Lee, including threats Plaintiff made against Lee; the hearing was initiated by Devlin. See Defs.' Sec. Mem. at 20. Plaintiff specifically took issue with the evidence supporting Plaintiff's threats against Lee. Id. In particular, the video capturing Plaintiff's threats toward Lee lacked audio, which Plaintiff argued provided insufficient evidence of his alleged threats. Id.  However, Lee and non-party C.O. Dumar testified at the hearing from firsthand knowledge that Plaintiff threatened Lee. Id. at 20. Plaintiff countered with no evidence or witnesses to refute these contentions at the hearing. Id. at 20-21. From this evidence, Devlin determined that Plaintiff was guilty of "Creating a Disturbance, Harassment and Threats," and Hearing Defendants thereafter provided Plaintiff with the disposition and advised him of his rights of appeal. Id. (citing Matula Aff., Ex. E at 190-91). Devlin took into account Plaintiff's ten prior facility correspondence violations and nine

25

prior solicitation violations. Defs.' Sec. Mem. at 21.

Plaintiff again fails to show a genuine dispute of material fact concerning his due process rights. Multiple witnesses testified to Plaintiff's behavior and Plaintiff provided no witnesses or exhibits to the contrary. Two firsthand accounts of Plaintiff's behavior are more than enough to reach the "any evidence" threshold required under Hill. Moreover, Plaintiff was advised of his appellate rights and was provided notice of the charges against him. See id. Thus, Hearing Defendants are granted summary judgment with respect to the August 7, 2015, hearing.

### 4. April 27, 2016, Hearing

The next hearing Plaintiff challenges on due process grounds is an April 27, 2016, hearing presided over by Minard. Id. The hearing relied on a misbehavior report and resulted in a 30-day loss of recreation, packages, commissary, and phone privileges. Id. The consequences—a 30-day loss of certain minor privileges—do not create a liberty interest under Sandin's atypical and significant hardship standard. Neither the Second Circuit nor the Supreme Court has held that losing these sorts of minor privileges would implicate a liberty interest. Indeed, Plaintiff would have to provide evidence that the consequences of his loss were "dramatically different from the basic conditions of [his] sentence." Sandin 515 U.S. at 484. However, the loss of certain privileges for a mere thirty days does not constitute a "major disruption in his environment," id. at 486. Thus, there exists no genuine dispute of material fact regarding whether Plaintiff's due process rights were violated at the April 27, 2016, hearing.

### 5. May 20, 2016, Hearing

Plaintiff next challenges the May 20, 2016, hearing presided over by Minard. Am. Compl. at 33. Plaintiff raises several arguments that turn on his inability to properly contest the charges against him. Id. Plaintiff argues that he was not able to question Delisle and Stickney,

and that he was not permitted to ask them about other unrelated grievances. Defs.' Sec. Mem. at 23. Plaintiff also objects to the hearing officer denying his request for the testimony of an unspecified member of the DOCCS Counsel's office. Id.

Defendants raise several uncontested arguments. First, Defendants provide admissible evidence that, contrary to Plaintiff's Amended Complaint, he was indeed able to question Delisle and Stickney, see Dkt. No. 94-11, Matula Aff. Ex. H at 532. Second, Defendants establish that Minard properly denied Plaintiff the opportunity to question Delisle and Stickney on unrelated, irrelevant grounds. Id. at 533. Third, Defendants note that they properly denied Plaintiff's request to question the DOCCS Counsel's office member because the member was not present during the alleged events at issue, and therefore, lacked helpful testimony. Id. at 561.

Based on these facts, the Court agrees with Defendants that there were no due process violations at the hearing. Defendants provide admissible evidence via Matula that Plaintiff was able to properly question Defendants, and that they properly limited the scope of questioning to the grievance at issue. Matula Aff., Ex. H at 532, 548-558. Thus, there is no genuine dispute of material fact regarding Plaintiff's alleged deprivation of due process at the May 20, 2016, hearing.

### 6. *February 23, 2017, Hearing*

Plaintiff's final due process allegation concerns a February 23, 2017, hearing presided over by Minard. However, the consequences of this hearing resulted in only a 30-day loss of recreation, packages, commissary, and phone privileges. Matula Aff. Ex. J at 69. Like the April 27, 2016, hearing, these consequences do not constitute a "major disruption in his environment," Sandin 515 U.S. at 486, that would create a liberty interest under the Fourteenth Amendment. As

such, there exists no genuine dispute of material fact and Hearing Defendants are entitled to summary judgment.

### G. Plaintiff's Eighth Conditions of Confinement Claim against Miller, Venettozzi, and Zerniak

To make out an Eighth Amendment conditions of confinement claim, a plaintiff must establish both objective and subjective elements. See Wilson, 501 U.S. at 297. Under the objective prong, the plaintiff must show that the deprivation was "sufficiently serious," and the subjective prong is satisfied by showing a sufficiently culpable state of mind on the part of the official responsible for the deprivation. Id. at 297. To be sufficiently serious, the prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities. See Farmer, 511 U.S. at 834. In order to have the required state of mind, an official must be "deliberately indifferent" to a substantial risk of serious harm to the inmate. Id. at 828.

Here, Defendants argue that Plaintiff's claims fail both the objective and subjective components of the Eighth Amendment analysis. Defs.' Sec. Mem. at 26. However, the Court need not reach the merits of Plaintiff's Eighth Amendment claim against these Defendants because Plaintiff has failed to provide admissible evidence showing the personal involvement of these Defendants in creating the conditions the Plaintiff alleges ran afoul of the Eighth Amendment. "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Farrell, 449 F.3d at 486 (citing Wright v. Smith, 21 F.3d 496, 501 (2d Cir.1994)). Instead, the Court concludes that there is no genuine dispute of material fact with respect to whether Miller, Venettozzi and Zerniak were involved in the alleged Eighth Amendment violations.

### V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' Second Motion for Summary Judgment (Dkt. No. 94) be **GRANTED in part** with respect to (1) Plaintiff's First Amendment retaliation claims against Brown, Devlin, Keysor, Kirkpatrick, McIntosh, and Racette; (2) Plaintiff's Eighth Amendment claims pertaining to the shield order against Lee, Delisle, and Orzech; (3) Plaintiff's First Amendment mail interference claim against Lee; (4) all of Plaintiff's remaining Fourteenth Amendment due process claims; and (5) Plaintiff's Eighth Amendment conditions of confinement claim against Miller, Venettozzi and Zerniak; and it is further

**ORDERED**, that Defendants' Second Motion for Summary Judgment (Dkt. No. 94), be **DENIED in part** to the extent it sought (1) dismissal of Plaintiff's claims against Bezio, Bullis, Minard, and Prack on the basis of improper service of process; and (2) a grant of summary judgment in favor of Randall, Rief, and Brown on Plaintiff's Eighth Amendment conditions of confinement claim relating to the conditions of Cell 13; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:       September 19, 2022
             Albany, New York

LAWRENCE E. KAHN
United States District Judge

29